IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

ALLEN E. SMITH, individually
and on behalf of all other
persons and entities similarly
situated,

               **Plaintiffs,**

v.

JAY-BEE OIL & GAS, INC., a
West Virginia corporation;
JAY-BEE PRODUCTION COMPANY,
a West Virginia corporation;
JB EXPLORATION I, LLC, a
West Virginia limited
liability company; JAY-BEE
ROYALTY, LLC, a West Virginia
limited liability company;
RANDALL J. BRODA; and any other
person or entity affiliated with,
interested in, or claiming any
right or benefit of the subject
leases,

               **Defendants.**

**FILED**

**JAN 17 2020**

Candy L. Warner
Tyler Co. Circuit Clerk

Civil Action No. 20-C-2H

---

## CLASS ACTION COMPLAINT

---

       Plaintiff Allen E. Smith ("Plaintiff"), by counsel, brings this action on behalf of himself and all other similarly situated persons, companies, and entities ("Class Members") and hereby alleges, upon personal knowledge, information, and belief, and upon reasonable investigation by counsel, that substantial evidentiary support exists or will exist after reasonable opportunity for further investigation and discovery of evidence, as follows:

Page **1** of **12**

1.    Plaintiff is a citizen and resident of Wood County, West Virginia.

2.    Plaintiff is the owner of certain mineral and oil and gas rights and interests in Tyler County, West Virginia, and is identified as the lessor in the Memorandum of Oil and Gas Lease of record in Book 578, at Page 63, in the Office of the Clerk of the County Commission of Tyler County, West Virginia.

3.    Defendant Jay-Bee Oil & Gas, Inc. ("JB Oil & Gas") is a West Virginia corporation which conducts business from its location in Cairo, Ritchie County, West Virginia.

4.    Defendant Jay-Bee Production Company ("JB Production") is a West Virginia corporation which conducts business from its location in Cairo, Ritchie County, West Virginia.

5.    Defendant JB Exploration I, LLC ("JB Exploration") is a West Virginia limited liability company which conducts business from its location in Cairo, Ritchie County, West Virginia.

6.    Defendant Jay-Bee Royalty, LLC ("JB Royalty") is a West Virginia limited liability company which conducts business from its location in Cairo, Ritchie County, West Virginia.

7.    Defendant Randall Broda is a citizen and resident of Delray Beach, Palm Beach County, Florida.

8.    At all relevant times, JB Oil & Gas, JB Production, JB Exploration, and JB Royalty ("the Companies") conducted business, independently and jointly and in concert, by combining

their property, leases, equipment, personnel, money, skill, knowledge and management, as agents and partners of each other, in furtherance of their common undertaking, venture, and enterprise in leasing, extracting, producing, transporting, and marketing natural gas from wells located in West Virginia pursuant to the leases they executed with Plaintiff and Class Members.

9.   At all relevant times, and since 1982, the Companies, and their predecessors in interests and affiliates, transacted and conducted business in leasing, extracting, producing, transporting, and marketing natural gas from wells specifically located in Tyler County, Wetzel County, Doddridge County, Ritchie County, Gilmer County, and other counties within West Virginia.

10.   At all relevant times, Broda was the majority shareholder, managing member, and President and officer of the Companies – his alter ego; he was the individual with unity of interest with each of the Companies and was the person who directed, controlled, and ratified all activities, actions, and conduct of the Companies alleged to be wrongful, unlawful, knowing, willful, intentional, and tortious, as more fully set forth herein; and, as such, he is personally liable for all damages and losses sustained by Plaintiff and Class Members.

11.   This Court is vested with subject matter and personal jurisdiction over the parties and claims presented in this civil action.

12.   This Court is the proper venue of and for this civil action.

13.   At relevant times, the Companies and Broda, or one or more of them, made representations to Plaintiff and Class Members as to material facts and terms and conditions, including the percentage royalty payments to be made to them and the deductions therefrom as expressed in each of the oil and gas leases executed by Plaintiff and Class Members.

14.   The material representations by the Companies and Broda to Plaintiff and Class Members were that the percentage royalty payments were to be calculated upon the gross production of oil and natural gas from each well drilled under each lease, and that there would be either: (a) no deduction made by the Companies for any post-production expenses or costs incurred, or (b) only limited post-production expenses or costs would be allowable.

15.   At all relevant times, Plaintiff and Class Members reasonably relied upon the material representations made by the Companies and Broda to them, as stated above, and such representations induced Plaintiff and Class Members to execute each of the oil and gas leases.

16.   Contrary to the representations made to Plaintiff and Class Members concerning the royalty payments to be made and the deductions allowable therefrom under each of their oil and gas leases, the Companies and Broda have wrongfully, unlawfully, knowingly, willfully, intentionally, and negligently deducted, withheld, and converted substantial money to their individual, collective economic benefit without notice to Plaintiff and Class Members; consequently, the material representations relied upon by Plaintiff and Class Members were, and are, false.

17.   All oil and gas leases executed by Plaintiff and Class Members constitute conveyances and written contracts under West Virginia law.

18.   Prior to the initiation of this civil action, the Companies and Broda knew, and were informed, that substantial deductions of money, representing post-production expenses, were being withheld and converted from royalty payments being made to Plaintiff and Class Members, in violation of the express terms and conditions of each of their oil and gas leases.

19.   In spite of their knowledge of said deductions from royalty payments, the Companies and Broda, in conscious and outrageous disregard of the rights of Plaintiff and Class Members, intentionally, maliciously, unlawfully, and fraudulently concealed the fact that they were making such deductions from royalty

payments in violation of the express terms and conditions of each of the oil and gas leases.

20. At relevant times relating to the claims made in this civil action, Broda and others, acting for and on behalf of the Companies, conspired and acted in concert under a common plan and scheme in violation and breach of their trust relationship, obligations, duties, and responsibilities under the oil and gas leases with Plaintiff and all Class Members.

21. As a result of the improper deductions from royalty payments being made by the Companies and Broda, the oil and gas leases executed by Plaintiff and Class Members are conveyances without full and fair consideration having been paid and are contracts which have been breached.

22. The conduct and actions of the Companies and Broda, set forth above, constitute breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, conversion, misrepresentation, fraud and concealment, civil conspiracy, and negligence.

23. In addition, the claims and causes of action set forth above are appropriate to be certified and prosecuted as a class action pursuant to Rule 23, *West Virginia Rules of Civil Procedure,* because:

a. The class is so numerous that joinder of all members is impracticable;

b. There are questions of law or fact common to the class;

c. The claims made by Plaintiff in this civil action are typical of the claims of all Class Members, and;

d. Plaintiff will fairly and adequately represent and protect the interests of the class.

24. Specifically, there exist a class of individuals and entities, like Plaintiff, who own oil and gas rights in West Virginia in their entirety or a fractional interest thereof; who have entered into oil and gas leases with the Companies and Broda, and/or to which the Companies and Broda have otherwise been assigned rights and responsibilities under and pursuant to said leases; and, under said leases there have been improper and unlawful deductions of post-production expenses from royalty payments made to Plaintiff and all Class Members.

25. The claims of Plaintiff are typical of the claims of all Class Members, Plaintiff will fairly and adequately represent and protect the interests of the Class Members with respect to all common issues of fact and law, and Plaintiff has retained legal counsel to prosecute said civil action for and on behalf of himself and all Class Members.

26. Class Members includes hundreds of individuals and entities who have leased their oil and gas rights to the Companies and Broda; and the class is therefore so numerous that joinder of

all Class Members is impractical and would impose heavy burdens upon the Court.

27. In addition, the prosecution of the claims presented in this civil action by all Class Members in separate actions would create a risk of varying adjudications with respect to individual members of the class, could be dispositive of interests of other members of the class not parties and/or may impede their ability to protect their interests, and/or the Companies and Broda have acted or refused to act on such grounds generally applicable to the class thereby making declaratory or injunctive relief appropriate for the whole class.

28. There are questions of law, fact, and damages common to all Class Members which predominate over any questions affecting individual Class Members, including, but not limited to, the following:

a. Whether the oil and gas leases entered into by Plaintiff and all Class Members provide for deduction of post-production expenses to be made from their royalty payments?

b. Do the deductions for post-production expenses from royalty payments constitute a breach of contract?

c. Do the deductions for post-production expenses from royalty payments constitute breach of fiduciary duty?

d.  Do the deductions for post-production expenses from royalty payments constitute breach of the implied covenant of good faith and fair dealing?

e.  Do the deductions for post-production expenses from royalty payments constitute conversion?

f.  Were there misrepresentations made to Plaintiff and Class Members as to the deductions made for post-production expenses from royalty payments?

g.  Do the deductions for post-production expenses from royalty payments constitute fraud?

h.  Do the deductions for post-production expenses from royalty payments constitute negligence?

i.  Did the Companies, acting by and through their officials, agents, and employees, and Broda conspire to gain an economic advantage by improperly and unlawfully deducting post-production expenses from royalty payments made to all Class Members?

j.  Did the Companies, acting by and through their officials, agents, and employees, and Broda conceal their improper and unlawful deductions of post-production expenses from royalty payments made to all Class Members?

k.  What damages are available to Class Members?

l.  Are Class Members entitled to punitive damages?

 m. Whether Plaintiff and Class Members are entitled to an accounting of royalties paid and post-production expenses deducted therefrom?

 n. Such other factual or legal issues as are apparent from the allegations and causes of action alleged above.

 29. The difficulties in management of this case as a class action are outweighed by the benefits of disposing of common issues of law and fact as to the large number of litigants, and it is desirable to concentrate the litigation in one forum for the management of this civil action due to the number of cases filed, pending, or to be filed.

 30. The questions of law and facts common to the Class Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this civil action.

 31. As a direct and proximate result of the negligent, intentional, and unlawful conduct and actions of the Companies and Broda, as aforesaid, Plaintiff and all Class Members have sustained damages, losses, costs, and expenses including attorney fees, and are all entitled to relief as more fully set forth and requested below.

**WHEREFORE**, Plaintiff, individually, and for and on behalf of all Class Members, demands an award of damages and judgment for equitable, injunctive, and declaratory relief, against the Companies and Broda, jointly and severally, as set forth below:

A.  Compensatory damages in an amount to be determined by the Court and jury;

B.  Punitive damages in an amount to be determined by the Court and jury;

C.  The costs and disbursements of this actions, including attorney fees;

D.  Prejudgment and post-judgment interest;

E.  Equitable and injunctive relief in the form of an accounting of all royalties paid and the post-production expenses deducted therefrom;

F.  That the Court finds this is an appropriate action to be certified and prosecuted as a class action pursuant to Rule 23 of the West Virginia Rules of Civil Procedure and the Court finds that Plaintiff and the undersigned legal counsel are appropriate representatives and appropriate counsel for the class; and,

G.  Such other relief, as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES IN ACCORDANCE
WITH RULE 38, *WEST VIRGINIA RULES OF CIVIL PROCEDURE.*

> ALLEN E. SMITH, individually
> and on behalf of all other
> persons and entities similarly
> situated,
> Plaintiff,
> By Counsel,

Timothy R. Linkous, Esquire
(WVSB #8572)
Jenny L. Hayhurst, Esquire
(WVSB #11752)
Linkous Law, PLLC
179 Hanalei Drive, Suite 100
Morgantown, WV 26508
(304) 554-2400
tim@linkouslawpllc.com

J. Michael Benninger, Esquire
(WVSB #312)
Benninger Law, PLLC
P. O. Box 623
Morgantown, WV 26507
(304) 241-1856
mike@benningerlaw.com



jjenkins@jaybeeoil.com

## *JAY-BEE COMPANIES*

February 18, 2020

Honorable Candy Warner
Tyler County Circuit Clerk
P. O. Box 8
Middlebourne, WV 26149

     **Re:**  **Smith v. Jay-Bee Oil & Gas, Inc. et al.**
        **Tyler County Civil Action No. 20-C-2 H**

Dear Ms. Warner:

   Please find enclosed for filing in the above-referenced matter **Defendants Jay-Bee Oil & Gas, Inc., Jay-Bee Production Company, JB Exploration I, LLC, and Jay-Bee Royalty, LLC's, Joint Answer to Plaintiff's Class Action Complaint** as well as a **Civil Case Information Statement**.

   I appreciate your attention to this matter and should you have any questions, please do not hesitate to contact me.

           Best regards,

           Joseph L. Jenkins
           General Counsel

Enclosures as stated.

cc:  Honorable David W. Hummel, Jr.
    Timothy R. Linkous, Esq./Jenny L. Hayhurst, Esq.
    J. Michael Benninger, Esq.

**IN THE CIRCUIT COURT OF** _____ **TYLER** _____ **COUNTY, WEST VIRGINIA**

## CIVIL CASE INFORMATION STATEMENT
### (Civil Cases Other than Domestic Relations)

### I. CASE STYLE:

| | |
|---|---|
| **Plaintiff(s)** | Case No. **20-C-2 H** |
| Allen E. Smith | Judge: **David W. Hummel, Jr.** |

**vs.**

**Defendant(s)**

| | Days to Answer | Type of Service |
|---|---|---|
| Jay-Bee Oil & Gas, Inc. | 30 | WVSOS |
| Name | | |
| See attorney address. | | |
| Street Address | | |
| | | |
| City, State, Zip Code | | |

### II. TYPE OF CASE:

- [✓] General Civil
- [ ] Mass Litigation *[As defined in T.C.R. 26.04(a)]*
  - [ ] Asbestos
  - [ ] FELA Asbestos
  - [ ] Other: _____
- [ ] Habeas Corpus/Other Extraordinary Writ
- [ ] Other: _____

- [ ] Adoption
- [ ] Administrative Agency Appeal
- [ ] Civil Appeal from Magistrate Court
- [ ] Miscellaneous Civil Petition
- [ ] Mental Hygiene
- [ ] Guardianship
- [ ] Medical Malpractice

### III. JURY DEMAND: [✓] Yes [ ] No  CASE WILL BE READY FOR TRIAL BY (Month/Year): 12 / 2020

### IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS?

[ ] Yes [✓] No

**IF YES, PLEASE SPECIFY:**
- [ ] Wheelchair accessible hearing room and other facilites
- [ ] Reader or other auxiliary aid for the visually impaired
- [ ] Interpreter or other auxiliary aid for the deaf and hard of hearing
- [ ] Spokesperson or other auxiliary aid for the speech impaired
- [ ] Foreign language interpreter-specify language: _____
- [ ] Other: _____

Attorney Name: Joseph L. Jenkins

Firm: General Counsel, Jay-Bee Companies

Address: 75 Crosswind Drive, Bridgeport, WV 25330

Telephone: (304) 933-3878

[ ] **Proceeding Without an Attorney**

**Representing:**
- [ ] Plaintiff   [✓] Defendant
- [ ] Cross-Defendant   [ ] Cross-Complainant
- [ ] 3rd-Party Plaintiff   [ ] 3rd-Party Defendant

Original and _____ copies of complaint enclosed/attached.

Dated: 02 / 18 / 2020   Signature: _____

**SCA-C-100: Civil Case Information Statement (Other than Domestic Relations)**   Revision Date: 12/2015

**Plaintiff:** Allen E. Smith _____ , *et al*   **Case Number:** 20-C-2 H _____

**vs.**

**Defendant:** Jay-Bee Oil & Gas, Inc. _____ , *et al*

## CIVIL CASE INFORMATION STATEMENT
## DEFENDANT(S) CONTINUATION PAGE

Jay-Bee Production Company _____
Defendant's Name

See attorney address. _____         Days to Answer: ___30___
Street Address
                                              Type of Service: WVSOS _____
_____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JB Exploration I, LLC _____
Defendant's Name

See attorney address. _____         Days to Answer: ___30___
Street Address
                                              Type of Service: WVSOS _____
_____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Jay-Bee Royalty, LLC _____
Defendant's Name

See attorney address. _____         Days to Answer: ___30___
Street Address
                                              Type of Service: WVSOS _____
_____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____
Defendant's Name
                                              Days to Answer: _____
_____
Street Address
                                              Type of Service: _____
_____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____
Defendant's Name
                                              Days to Answer: _____
_____
Street Address
                                              Type of Service: _____
_____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____
Defendant's Name
                                              Days to Answer: _____
_____
Street Address
                                              Type of Service: _____
_____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____
Defendant's Name
                                              Days to Answer: _____
_____
Street Address
                                              Type of Service: _____
_____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**SCA-C-100: Civil Case Information Statement-Defendant(s) Continuation Page**          Revision Date: 12/2015

## IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

**ALLEN E. SMITH,**

      **Plaintiff,**

**v.**
                                              **Civil Action No. 20-C-2 H**
                                              **Honorable David W. Hummel, Jr.**

**JAY-BEE OIL & GAS, INC.,**
**JAY-BEE PRODUCTION COMPANY,**
**JB EXPLORATION I, LLC,**
**JAY-BEE ROYALTY, LLC, and**
**RANDALL J. BRODA,**

      **Defendants.**

## DEFENDANTS JAY-BEE OIL & GAS, INC., JAY-BEE PRODUCTION COMPANY, JB EXPLORATION I, LLC, AND JAY-BEE ROYALTY, LLC'S JOINT ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT

COME NOW Jay-Bee Oil & Gas, Inc., Jay-Bee Production Company, JB Exploration I, LLC and Jay-Bee Royalty, LLC (collectively the "Defendants"), by counsel, and for their Answer to Plaintiff's Class Action Complaint ("Complaint") state as follows:

### ANSWER

1.      Defendants are informed, and upon such information believe, that the statements and allegations contained in numbered paragraph 1 of the Complaint are true and admit the same upon such information and belief.

2.      Defendants are informed, and upon such information believe, that the statements and allegations contained in numbered paragraph 2 of the Complaint are true and admit the same upon such information and belief.

3.      Defendant Jay-Bee Oil & Gas, Inc. admits the statements and allegations contained in numbered paragraph 3 of the Complaint.

4.      Defendant Jay-Bee Production Company admits the statements and allegations contained in numbered paragraph 4 of the Complaint.

5.      Defendant JB Exploration I, LLC admits the statements and allegations contained in numbered paragraph 5 of the Complaint.

6.      Defendant Jay-Bee Royalty, LLC admits the statements and allegations contained in numbered paragraph 6 of the Complaint.

7.      Defendants are informed, and upon such information believe, that the statements and allegations contained in numbered paragraph 7 of the Complaint are true and admit the same upon such information and belief.

8.      Defendants admit the statements and allegations contained in numbered paragraph 8 to the extent Defendants are independently engaged in various elements of the natural gas industry in West Virginia.  Defendants deny the remaining statements and allegations contained in numbered paragraph 8 of the Complaint not specifically admitted herein.

9.      Defendants admit the statements and allegations contained in numbered paragraph 9 of the Complaint.

10.     Defendants admit the statements and allegations contained in numbered paragraph 10 to the extent Randall J. Broda is an owner, member or president of Defendants.  Defendants deny the remaining statements and allegations contained in numbered paragraph 10 of the Complaint not specifically admitted herein.

11.     Defendants admit the statements and allegations contained in numbered paragraph 11 to the extent they are applicable to Defendants.  Defendants deny the remaining statements and allegations contained in numbered paragraph 11 of the Complaint not specifically admitted herein.

12.     Defendants admit the statements and allegations contained in numbered paragraph 12 of the Complaint to the extent it applies to Plaintiff and not the alleged class.  Defendants deny the remaining statements and allegations contained in numbered paragraph 12 of the Complaint not specifically admitted herein.

13.     With respect to numbered paragraph 13 of the Complaint, Defendants admit some of them have executed oil and gas leases.  With respect to the characterizations regarding the leases, Defendants neither admit nor deny as the leases speak for themselves.  To the extent the Complaint mischaracterizes and misconstrues the leases, Defendants deny the inferences which Plaintiff has drawn therefrom and deny the remaining statements and allegations contained in numbered paragraph 13 of the Complaint not specifically admitted herein.

14.     With respect to numbered paragraph 14 of the Complaint, Defendants admit some of them have executed oil and gas leases and that those leases typically have royalty provisions. With respect to the characterizations regarding the leases, Defendants neither admit nor deny as the leases speak for themselves.  To the extent the Complaint mischaracterizes and misconstrues the leases, Defendants deny the inferences which Plaintiff has drawn therefrom and deny the remaining statements and allegations contained in numbered paragraph 14 of the Complaint not specifically admitted herein.

15.     With respect to numbered paragraph 15 of the Complaint, Defendants admit some of them have executed oil and gas leases.  With respect to the characterizations regarding the leases, Defendants neither admit nor deny as the leases speak for themselves.  To the extent the Complaint mischaracterizes and misconstrues the leases, Defendants deny the inferences which Plaintiff has drawn therefrom and deny the remaining statements and allegations contained in numbered paragraph 15 of the Complaint not specifically admitted herein.

16.     Defendants deny the statements and allegations contained in numbered paragraph 16 of the Complaint.

17.     Defendants state that the matters asserted in numbered paragraph 17 of the Complaint represent legal conclusions, rather than allegations of fact, and therefore do not require a response by way of admission or denial; however, to the extent any factual allegations are contained therein, Defendants lack knowledge or information sufficient to form a belief as to the truth of the statements and allegations contained in numbered paragraph 17 of the Complaint, and therefore deny the same and demand strict proof thereof.

18.     Defendants deny the statements and allegations contained in numbered paragraph 18 of the Complaint.

19.     Defendants deny the statements and allegations contained in numbered paragraph 19 of the Complaint.

20.     Defendants deny the statements and allegations contained in numbered paragraph 20 of the Complaint.

21.     Defendants deny the statements and allegations contained in numbered paragraph 21 of the Complaint.

22.     Defendants deny the statements and allegations contained in numbered paragraph 22 of the Complaint.

23.     Defendants deny the statements and allegations contained in numbered paragraph 23, and each of its subparagraphs (a) to (d), of the Complaint.

24.     With respect to numbered paragraph 24 of the Complaint, Defendants admit some of them have executed oil and gas leases.  With respect to the characterizations regarding the leases, Defendants neither admit nor deny as the leases speak for themselves.  To the extent the

Complaint mischaracterizes and misconstrues the leases, Defendants deny the inferences which Plaintiff has drawn therefrom and deny the remaining statements and allegations contained in numbered paragraph 24 of the Complaint not specifically admitted herein.

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the statements and allegations contained in numbered paragraph 25 of the Complaint with respect to Plaintiff's reasons for retaining counsel and therefore deny the same and demand strict proof thereof.  Defendants deny the remaining statements and allegations contained in numbered paragraph 25 of the Complaint not specifically admitted herein.

26.     Defendants deny the statements and allegations contained in numbered paragraph 26 of the Complaint.

27.     Defendants deny the statements and allegations contained in numbered paragraph 27 of the Complaint.

28.     Defendants deny the statements and allegations contained in numbered paragraph 28, and each of its subparagraphs (a) to (n), of the Complaint.

29.     Defendants deny the statements and allegations contained in numbered paragraph 29 of the Complaint.

30.     Defendants deny the statements and allegations contained in numbered paragraph 30 of the Complaint.

31.     Defendants deny the statements and allegations contained in numbered paragraph 31 of the Complaint.

32.     Defendants deny Plaintiff, and the alleged class members, are entitled to any of the relief requested in the Complaint.

## AFFIRMATIVE DEFENSES

Defendants assert the following defenses in response to Plaintiff's claims, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. As permitted by Rule 8(e)(2), defenses to the claims made in the Complaint may be asserted alternatively and, in some cases, hypothetically. Defenses may be asserted regardless of apparent consistency and are based on both legal and equitable grounds. As the facts of this civil action are fully developed through the discovery process, Defendants reserve all rights to assert additional defenses, affirmative or otherwise, as they become known and certain defenses may be abandoned, modified, or amended as permitted by and consistent with the Rules of Civil Procedure. Defendants incorporate by reference the admissions, statements, and denials contained in its answer as if set forth fully herein.

### FIRST DEFENSE

Pursuant to Rule 12(b)(6) of the Rules of Civil Procedure, the Plaintiff's Complaint fails to state a claim upon which relief may be granted and should be dismissed.

### SECOND DEFENSE

Plaintiff fails to meet the prerequisites to a class action; and fails to meet the requirements to maintain a class action.

### THIRD DEFENSE

Pursuant to Rule 12(b)(3) of the Rules of Civil Procedure, this Court is the improper venue because some of the claims in Plaintiff's Complaint are required to be submitted to arbitration.

## FOURTH DEFENSE

Defendants assert claims in the Plaintiff's Complaint are barred, in whole or in part, by the following affirmative defenses or doctrines: statute of limitations, ratification, waiver, estoppel, laches, payment, compromise, settlement, release, and accord and satisfaction.

## FIFTH DEFENSE

Plaintiff has failed to plead the claim of fraud with particularity.

## SIXTH DEFENSE

Claims for punitive damages in the Plaintiff's Complaint are not allowed because this is a breach of contract matter and Defendants did not maliciously, willfully, wantonly, or recklessly commit any tortious acts.

## SEVENTH DEFENSE

The Complaint, to the extent it seeks punitive damages from the Defendants, violates the Defendants rights to procedural due process under the Fourteenth Amendment of the United States Constitution and the Constitution of the State of West Virginia and therefore fails to state a cause of action upon which punitive damages can be awarded.

## EIGHTH DEFENSE

The Complaint, to the extent that it seeks punitive damages from Defendants, violates Defendants' right to protection from excessive fines as provide in the Eighth Amendment of the United States Constitution and Article 3, Section 5 of the Constitution of the State of West Virginia and violates Defendants' rights to substantive due process as provided by the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of West Virginia; and therefore, fails to state a cause of action upon which punitive damages can be awarded.

## NINTH DEFENSE

Claims for attorney fees in the Plaintiff's Complaint are barred by West Virginia common law; and because the same are not provided for in any contractual provision.

## TENTH DEFENSE

Claims for prejudgment interest are barred because the same are not provided for in any contractual provision.

## ELEVENTH DEFENSE

Claims in the Plaintiff's Complaint against some Defendants are barred or fail for lack of privity.

## TWELFTH DEFENSE

Claims in the Plaintiff's Complaint against Jay-Bee Oil & Gas, Inc. and Jay-Bee Royalty, LLC are barred or fail because these Defendants do not lease mineral and oil and gas interests or rights.

## THIRTEENTH DEFENSE

Defendants assert all defenses available to it under West Virginia statutory and common law applicable to the claims and allegations set forth in the Complaint.

## FOURTEENTH DEFENSE

All statements and allegations in the Complaint that are not specifically admitted herein are denied.

## JURY TRIAL

Defendants hereby demand a trial by jury on all issues so triable.

**WHEREFORE**, Defendants respectfully pray that this Honorable Court dismiss Plaintiff's Class Action Complaint with prejudice, that Defendants be awarded their costs and attorney fees incurred in the defense of this action, and for any further relief as this Honorable Court deems just and proper.

Respectfully submitted,
**JAY-BEE OIL & GAS, INC.,**
**JAY-BEE PRODUCTION COMPANY,**
**JB EXPLORATION I, LLC,** and
**JAY-BEE ROYALTY, LLC**
By Counsel,

By: _____
Joseph L. Jenkins (W.Va. Bar No. 9680)
General Counsel, Jay-Bee Companies
75 Crosswind Drive
Bridgeport, West Virginia 25330
Phone: 304.933.3878
Fax: 304.933.3879
Email: jjenkins@jaybeeoil.com

IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

**ALLEN E. SMITH,**

     **Plaintiff,**

**v.**                                                                                          Civil Action No. 20-C-2 H
                                                       Honorable David W. Hummel, Jr.

**JAY-BEE OIL & GAS, INC.,**
**JAY-BEE PRODUCTION COMPANY,**
**JB EXPLORATION I, LLC,**
**JAY-BEE ROYALTY, LLC, and**
**RANDALL J. BRODA,**

     **Defendants.**

## CERTIFICATE OF SERVICE

     I, Joseph L. Jenkins, do hereby certify that on this **18**[th] day of **February, 2020**, I served a

copy of the foregoing **Defendants Jay-Bee Oil & Gas, Inc., Jay-Bee Production Company, JB**

**Exploration I, LLC, and Jay-Bee Royalty, LLC's, Joint Answer To Plaintiff's Class Action**

**Complaint** via U.S. Mail, postage prepaid upon the following:

Timothy R. Linkous, Esq.               J. Michael Benninger, Esq.
Jenny L. Hayhurst, Esq.                Benninger Law, PLLC
Linkous Law, PLLC                    P. O. Box 623
179 Hanalei Drive, Suite 100         Morgantown, WV 26507
Morgantown, WV 26508

                                    By: _____
                                    Joseph L. Jenkins (W.Va. Bar No. 9680)



March 17, 2020

Candy Warner, Clerk
**Tyler County Courthouse**
121 Court Street
Middlebourne, WV  26149

     RE:    _Allen E. Smith v. Jay-Bee Oil & Gas, Inc., et al._
            Tyler County Civil Action No. 20_C-2

Dear Ms. Warner:

     Enclosed for filing in the above-referenced case is the original Certificate of Service for _"Plaintiff's First Set of Combined Discovery to Defendants"_.

     Please see that it is appropriately logged and filed in the above-referenced civil action.

     Thank you for your assistance in this regard.

               Very truly yours,

               Beverly Goodwin

               Beverly Goodwin, Paralegal

/bg
Encl.

cc w/encl:    Joseph L. Jenkins, Esq.

## IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

**ALLEN E. SMITH, individually**
**and on behalf of all other persons**
**and entities similarly situated,**

**Plaintiffs,**

**v.**

**JAY-BEE OIL & GAS, INC., a**
**West Virginia corporation;**
**JAY-BEE PRODUCTION COMPANY,**
**a West Virginia corporation;**
**JB EXPLORATION I, LLC, a**
**West Virginia limited**
**liability company; JAY-BEE**
**ROYALTY, LLC, a West Virginia**
**limited liability company;**
**RANDALL J. BRODA; and any other**
**person or entity affiliated with,**
**interested in, or claiming any right or**
**benefit of the subject leases,**

**Defendants.**

**Civil Action No. 20-C-2**
**Hon. Judge Hummel**

---

## PLAINTIFF'S FIRST SET OF COMBINED DISCOVERY TO DEFENDANTS

---

**COMES NOW** Plaintiff, Allen E. Smith, individually and on behalf of all other persons

and entities similarly situated, by and through counsel, pursuant to Rules 26, 33, 34, and 36 of

the West Virginia Rules of Civil Procedure, and hereby tenders the following Interrogatories and

Requests for Production of Documents and Things, to be answered within thirty (30) days of

service hereof.

The Interrogatories are to be answered under oath and in accordance with Rule 33. The

Requests for Admission are automatically admitted unless, within thirty (30) days after service

hereof, legally valid responses are served pursuant to Rule 36  Any documents and tangible

things responsive to the Requests for Production of Documents and Things must be produced for inspection and copying within thirty (30) days of service hereof at the law offices of Linkous Law, PLLC, 179 Hanalei Drive, Suite 100, Morgantown, West Virginia 26508, at a time convenient to said Defendant within said thirty (30) days and as made known to the law firm of Linkous Law, PLLC.  In the alternative, Plaintiff requests that, within thirty (30) days, said Defendant produce first generation copies of the documents and things requested to the law offices of Linkous Law, PLLC, 179 Hanalei Drive, Suite 100, Morgantown, West Virginia 26508.

**A.**      **Instructions:**

1.   The space for your answer following each Discovery Request is not intended to limit your response in any way or to suggest the length of the answer that is desired.  Full and complete answers are requested.  If you require additional space to complete any answer or response, you are requested to attach continuation sheets at the end of your responses and answers to these Discovery Requests and indicate thereon the Discovery Request to which you are responding.

2.   If, for any legitimate and legal reason, you refuse to provide information or Documents (see Definitions below) until and/or unless a Protective Order is entered by the Court having jurisdiction over this lawsuit, counsel for Defendants shall immediately notify counsel for this Plaintiff so appropriate action can be taken to address your refusal to provide information and/or Documents.  Moreover, your refusal should be made known to counsel for Plaintiff and a proposed Protective Order supplied to counsel for Plaintiff before the expiration of the time in which you are required to respond to these Discovery Requests.

3.   If you refuse to answer any Discovery Request in whole or in part, describe the basis for your refusal to answer, including any claim of privilege, in sufficient detail so as to permit the Court to adjudicate the validity of your refusal, and identify each Document (see Definitions below) and oral communication for which a privilege is claimed.

4.   If you object to furnishing any information requested by these Discovery Requests on the grounds of privilege, work-product, or otherwise, your response should state the existence of the information, Document or communication, identify the specific grounds on which your objection is based, and identify the information objected to by furnishing its date, participants (*e.g.*, speakers, authors, addressees) and a general description of the nature, rather than the substance, of the purportedly privileged information.  If the information to which you object contains relevant non-objectionable matter, you should disclose it.  Any claim of privilege should be accompanied by a statement of the following in each appropriate instance:

    a. The specific nature of the privilege upon which you rely (i.e. attorney-client privilege, work product doctrine, etc.), including an explanation of why this specific privilege applies to the document or tangible item being withheld;

    b. If a privileged communication, the parties to said communication, including the Identity (see Definitions below) of any recipient of the communication or individual who reviewed the communication at any time, whether the communication was in writing, oral, or oral and later reduced to writing, the date of the said communication, and the place where the said communication occurred; and/or

    c. A brief description of the communication or Document claimed to be privileged so that Plaintiff may know the reason for your claim that the privilege applies thereto, including the title or description of the Document or communication.

5. In answering these Discovery Requests, you are under a continuing duty to timely supplement your responses with respect to any question directly addressed to the Identity (see Definitions below) and location of persons having knowledge of discoverable matters, the Identity of each person, if any, expected to be called as a witness at trial, the Identity of each person, if any, expected to be called as an expert witness at trial and the subject matter on which he is expected to testify, and the Identity and location of Documents (see Definitions below) relating to the subject matter of the instant lawsuit. Furthermore, you are under a similar duty to correct any incorrect response immediately upon learning of your error.

6. These Discovery Requests shall be deemed to be continuing and require you to serve in the form of supplementary answers and responses any information or Documents (see Definitions below) requested herein which is unavailable to you, or of which you are unaware, at the time you submit your responses but after which becomes available or known to you. Similarly, any information provided in response to these Discovery Requests which is later found to be incorrect or incomplete or to have become incorrect or incomplete because of changed circumstances shall be corrected or completed by means of supplementary responses.

7. If you discover new information, you are obligated to supplement your responses to these Discovery Requests no later than thirty (30) days after the discovery of the further information and in no event later than fifteen (15) days before the first day of trial.

8. The relevant time period of these Discovery Requests is 1990 to the present and shall include all information which relates or refers to this period, unless another time or period of time is specifically referred to in a Discovery Request.

9. If you cannot furnish data, such as dates, periods or amounts, supply estimated data to the extent possible and indicate that the data is estimated.

10. All Documents (see Definitions below) and things produced in response to the Discovery Requests shall be produced in an orderly manner (and with appropriate markings or

other identification) so that Plaintiff will be able to identify the source of the Document, the file in which it was maintained, the person to whom such file belongs, and the number of the Discovery Request to which it responds.

11. If a Document (see Definitions below) or a portion thereof is responsive to more than one Discovery Request, you shall sufficiently identify each Document and/or portions thereof specifically responsive to each Discovery Request rather than simply referring to numerous Documents produced as one large exhibit.

12. If any Document (see Definitions below) or thing responsive to these Discovery Requests was, but is no longer in your possession, or subject to your custody or control, or in existence, state whether: (A) it is missing or lost; (B) it has been destroyed; (C) it has been transferred, voluntarily or involuntarily, to others; or (D) it has been disposed of otherwise. Also, state the Identity (see Definitions) of the last person having custody and/or control of the Document.

**B.**    **Definitions**:

1. The terms "**you**" and "**your**", when used herein, refer to Defendant, and Defendant's respective agent(s), servant(s), representative(s), employee(s), attorney(s), and/or person or entity acting on their behalf.

2. The term "**Person**" includes, without limitation, any natural person, individual, proprietorship, corporation, partnership, trust, joint venture, association, organization, business entity or governmental agency.

3. The term "**Document**", when used herein, means any writing as defined by Rule 1001 of the West Virginia Rules of Evidence, as well as any tangible thing which is in your possession, custody, or control, regardless of where located, including without limiting the generality of the foregoing the following: all originals, identical copies, and non-identical copies pertaining to any medium upon which intelligence or information is recorded; punch cards; printout sheets; movie films; videos; slides; phonograph records; photographs; notes; letters; memoranda; ledgers; work sheets; books; magazines; notebooks; diaries; calendars; appointment books; registers; charts; tables; papers; agreements; contracts; purchase orders; e-mail; social media, including "Facebook" and "MySpace" and similar internet sites and the postings, blogs, and other entries or material contained thereon; electronically stored data; computer readable material; raw data; acknowledgements; invoices; authorizations; budgets; analyses; projections; transcripts; minutes of meetings of any kind; correspondence; telegrams; drafts; data processing discs or tapes, and computer produced interpretations thereof; x-rays; instructions; announcements; schedules; and price lists; and any computer produced interpretations, mechanical or electric sound recordings, and transcripts of any of the foregoing. "**Document**" shall also include any data compilation from which information can be obtained or translated if necessary by you through detection devices into a reasonably useable form. In all cases, where originals or non-identical copies are not available, Document also means identical copies of original documents and copies of non-identical copies. All Documents requested shall be produced in an orderly manner (and with appropriate markings or other identification) so that this Defendant will be able to identify the

source of the Document, the file in which it was maintained, the person to whom such file belongs, and the number of the Discovery Request to which it responds.

4. The terms "**Identity**" and "**Identify**" when used herein, have the following meanings:

    a.   When used in reference to an individual, it means to state the person's (1) full name and telephone number; (2) present business address, or, if unavailable, last known business address; (3) present home address, or, if unavailable, last known home address; and (4) business or governmental affiliation and job title, or, if unavailable, last known business or governmental affiliation and job title.

    b.   When used in reference to corporate entities, it means to state the corporate name, and date and place of incorporation, and all of its present business addresses.

    c.   When used in reference to communications, it means to describe the statements and communications by (1) stating the date and place where they were made; (2) identifying each of the makers and recipients thereof in addition to all the persons present; and (3) indicating the medium of communication. **NOTE:** When identifying the date of an oral statement or communication, the precise date must be given. If only an approximate date is given, it will be presumed that you have no recall or specific knowledge as to the exact date.

    d.   When used in reference to a Document (see Definitions) or documentary evidence, it means to state the type of Document (e.g., letter, memorandum, telegram, chart), its author and originator, its date or dates, all addresses and recipients, its present location or custodian, the topics dealt with therein, with such reasonable particularity as is sufficient for a specific demand for production, and any identifying marks, numerals, code words or letters distinguishing it from other like documents. If any such document was but no longer is in your possession or subject to your custody or control, state what disposition was made of it. Documents to be identified shall include all those Documents in your possession, custody, and control and all of the Documents of which you have knowledge.

5.   The terms "**relating to**" and "**relates to**" mean, without limitation, relating to, constituting, concerning, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, or tending to prove, disprove or explain.

6.  "**And**", "**or**" and "**and/or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7.   The use of the singular includes the plural, and vice versa.

8.   The use of one gender includes all others, appropriate in the context.

9.   **"Discovery Requests"** shall mean the Interrogatories, Requests for Admission, and Requests for Production of Documents and Things set forth herein.

10.   **"WV Lease"** shall mean a lease wherein one or more of the Defendants is/are the lessee, the lease covers a mineral interest situated in West Virginia, and the lease was in effect at any time from 1990 to present.   "WV Lease" shall include the original lease, any addenda thereto, and/or any writing that altered the terms of the lease.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Define "Dominion gathering costs" and "Dominion gathering rate" as each term is utilized in your WV Leases, identify each cost encompassed within the definition, and describe how each identified cost is calculated.

**ANSWER:**

**INTERROGATORY NO. 2:** Identify any and all WV Leases.   For each lease, state (a) the name of the Lessor(s); (b) the County(ies) in which the oil and gas are situated; and (c) the deductions which each lease authorizes when calculating and paying royalties to the lessor(s).

**ANSWER:**

**INTERROGATORY NO. 3:** State and describe, in full and complete detail, the relationship(s) by and between the following: (1) Jay-Bee Oil & Gas, Inc.; (2) Jay-Bee Production Company; (3) JB Exploration I, LLC; (4) Jay-Bee Royalty, LLC; and (5) Randall J. Broda.   Include in your response a full and complete description of what each company does in relation to negotiating leases, procuring leases, producing oil and gas, gathering oil and gas, transmitting oil and gas, calculating royalties on oil and gas, determining deductions for royalty calculations, and paying lessors their royalty payment(s).

**ANSWER:**

**INTERROGATORY NO. 4:** With respect to WV Leases, Identify (see Definitions) all persons who are and/or have been involved in calculating, determining, and paying lessors their royalty interests from production of oil and gas, and, for each, state and describe in full detail the person's involvement.

**ANSWER:**

**INTERROGATORY NO. 5:** For the purpose of this discovery request only, the time frame applicable is from February 1, 2010 to present.  For each WV Lease for which a royalty payment was made to a lessor, state and describe how the calculation was made in full and complete detail, describing the basis of each calculation as well as the deductions that were made.

**ANSWER:**


**INTERROGATORY NO. 6:** For each Request for Admission below that you responded with anything other than an unqualified admission, state, describe, and explain in full and complete detail the bases of your response.

**ANSWER:**


## REQUESTS FOR ADMISSIONS

Pursuant to Rules 26, 33, 34 and 36 of the West Virginia Rules of Civil Procedure, Plaintiff Allen E. Smith tenders the following Requests for Admissions to be answered within thirty (30) days of service hereof.

**REQUEST FOR ADMISSION NO. 1:** Admit that one or more lessors of your WV Leases have, in writing and orally, questioned or challenged the deductions made by you from royalty payments as shown on your Summary of Distribution statements provided to each lessor.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 2:**  Admit that you have been deducting costs from royalty payments made to lessors of your WV Leases for the cost of production, storing, separating, treating, dehydrating, compressing, processing, transporting and marketing the oil and gas produced thereunder to transform said oil and gas produced into marketable form.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 3:**  Admit that you did not identify the nature and type of the costs being deducted from royalty payments being made to the lessors of your WV Leases.

**RESPONSE:**

## REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS

**REQUEST NO. 1:** Produce all WV Leases.

**RESPONSE:**

**REQUEST NO. 2:** With respect to each and every lease produced in response to Request for Production No. 1 above, produce all addenda, memoranda of understanding, and/or other writing which altered, added to, or in any way changed the original oil and gas lease.

**RESPONSE:**

**\*\*\*For Requests Nos. 3 through 12 below, rather than re-producing leases, Defendants are permitted to identify which WV Leases produced in response to Request for Production of Documents No. 1 above are responsive to each said Request\*\*\***

**REQUEST NO 3:** Produce all WV Leases which do not allow deductions for post-production expenses.

**RESPONSE:**

**REQUEST NO. 4:** Produce all WV Leases which allow for the "Dominion gathering rate" as the only expense to be deducted from royalty payments.

**RESPONSE:**

**REQUEST NO. 5:** Produce all WV Leases which allow for limited post-production expenses to be deducted from royalty payments.

**RESPONSE:**

**REQUEST NO. 6:** Produce all WV Leases which allow for all post-production expenses to be deducted from royalty payments.

**RESPONSE:**

**REQUEST NO. 7:** Produce all WV Leases which contain the following language: "There shall be no other deductions taken out of royalties".

**RESPONSE:**

**REQUEST NO. 8:**  Produce all WV Leases whereunder one or more of the Defendants made royalty payments to the Lessor.

**RESPONSE:**

**REQUEST NO. 9:**  Produce all WV Leases whereunder one or more of the Defendants made royalty payments to the Lessor and where no deductions were taken from the said royalty payments.

**RESPONSE:**

**REQUEST NO. 10:**  Produce all WV Leases whereunder one or more of the Defendants made royalty payments to the Lessor and where only the "Dominion gathering rate" was deducted from the said royalty payments.

**RESPONSE:**

**REQUEST NO. 11:**  Produce all WV Leases whereunder one or more of the Defendants made royalty payments to the Lessor and where only limited post-production expenses were deducted from the said royalty payments.

**RESPONSE:**

**REQUEST NO. 12:**  Produce all WV Leases whereunder one or more of the Defendants made royalty payments to the Lessor and where all post-production expenses were deducted from the said royalty payments.

**RESPONSE:**

**REQUEST NO. 13:**  For each deduction taken from a royalty payment made to a lessor under a WV Lease, produce all Documents (see Definitions) that permitted you to take each such deduction.  In your response, indicate which Documents produced correlate with the deduction taken.

**RESPONSE:**

**REQUEST NO. 14:** With respect to WV Leases, produce all division orders executed by lessors in Doddridge County.

**RESPONSE:**

**REQUEST NO. 15:** With respect to WV Leases, produce all division orders executed by lessors in Ritchie County.

**RESPONSE:**

**REQUEST NO. 16:** With respect to WV Leases, produce all division orders executed by lessors in Tyler County.

**RESPONSE:**

**REQUEST NO. 17:** With respect to WV Leases, produce all division orders executed by lessors in Wetzel County.

**RESPONSE:**

**REQUEST NO. 18:** With respect to WV Leases, produce all division orders executed by lessors in that were not already produced in Response to the Requests for Production of Documents set forth above.

**RESPONSE:**

**REQUEST NO. 19:** Produce all unitization Documents including, but not limited to, agreements, declarations, and maps for all producing units in the following:

- Doddridge County
- Gilmer County
- Ritchie County
- Tyler County
- Wetzel County
- Any other West Virginia County

**RESPONSE:**

**REQUEST NO. 20:** Produce all Documents pertaining to the "Dominion gathering rate" including, but not limited to, any agreements, contracts, or other documents defining the rate, calculating the rate, setting the rate, and/or otherwise establishing the rate.

**RESPONSE:**

**REQUEST NO. 21:** With respect to WV Leases and as the term "gathering" is used therein, produce all Documents pertaining to Defendants' costs related to "gathering."

**RESPONSE:**

**REQUEST NO. 22:** With respect to WV Leases, produce all Documents and information regarding the precise formula used in the calculation of royalty owed and/or paid to lessors. This includes, but is not limited to, all Documents with the formula utilized by one or more Defendants to calculate such royalties as well as the Documents utilized by one or More Defendants to support such formula.

**RESPONSE:**

**REQUEST NO. 23:** For the purpose of this discovery request only, the time frame applicable is from February 1, 2010 to present. For each WV Lease for which a royalty payment was made to a lessor, produce all Documents associated with the calculation and determination of each royalty payment made.

**RESPONSE:**

**REQUEST NO. 24:** With respect to WV Leases, produce all Documents, including but not limited to statements and receipts, showing itemized deductions for each royalty payment made to each lessor.

**RESPONSE:**

**REQUEST NO. 25:** For the purpose of this discovery request only, the time frame applicable is from February 1, 2010 to present. For each WV Lease under which a royalty payment was made to a lessor, produce all Documents relating to the sale price of gas, oil, and other hydrocarbons that one or more of the Defendants obtained and upon which the royalty payment was calculated.

**RESPONSE:**

**REQUEST NO. 26:** For the purpose of this discovery request only, the time frame applicable is from February 1, 2010 to present. With respect to the WV Leases, produce itemized statements of all post-production expenses incurred by one or more of the Defendants including but not limited to severance taxes, pipelines, surface facilities, telemetry, gathering, dehydration, transportation, fractionation, compression, manufacturing, processing, treating or marketing.

**RESPONSE:**

**REQUEST NO. 27:** Produce any and all Documents regarding or relating in any way to internal and/or external royalty accounting audits and/or requests by landowners for an accounting.

**RESPONSE:**

**REQUEST NO. 28:** Produce all Documents related in any way to correspondence and/or communications from lessors concerning and/or questioning royalty deductions.

**RESPONSE:**

**REQUEST NO. 29:** With respect to the communication and correspondence from lessors mentioned above, produce all Documents related in any way to response correspondence and/or communications from one or more of the Defendants to lessors.

**RESPONSE:**

**REQUEST NO. 30:** Produce all Documents related to communications or correspondence from lessors (a) requesting reimbursement for improper royalty deductions; (b) questions or concerns regarding royalty payments; (c) questions or concerns regarding royalty calculations; and (d) the like.

**RESPONSE:**

**REQUEST NO. 31:** With respect to the communication and correspondence from lessors mentioned above, produce all Documents related in any way to response correspondence and/or communications from one or more of the Defendants to lessors.

**RESPONSE:**

**REQUEST NO. 32:** Produce all Documents related in any way to logs, reports, or audio recordings from lessors concerning royalty calculations or questioning royalty payments.

**RESPONSE:**

**REQUEST NO. 33:** With respect to WV Leases, produce all Documents related in any way to correspondence and/or payments sent to landowners for improper deductions or alleged improper deductions. This includes, but is not limited to, reimbursement and/or other compensation for allegedly improper deductions.

**RESPONSE:**

**REQUEST NO. 34:** Produce any and all Documents regarding amendments and/or ratifications requests sent to lessors requesting that they alter and/or amend lease royalty language and/or deduction expenses in their WV Leases.

**RESPONSE:**

**REQUEST NO. 35:** Produce any and all Documents regarding signed amendments and/or ratifications by landowners altering or amending lease royalty language or deduction expenses.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36:** With regard to all your WV Leases, produce all written and electronic messages evidencing the responses made by you to the inquiries, demands and claims made by each lessor who questioned or challenged your deduction of costs from their royalty payments.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 37:** Produce all checks or documentation evidencing all payments made to lessors of your WV Leases in response to and satisfaction of the inquiries, demands and claims made by each lessor who questioned or challenged your deduction of costs from royalty payments.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38:** For each Request for Admission above that you responded with anything other than an unqualified admission, produce all Documents (see Definitions) that support your response.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 39:** Produce all Documents (see Definitions) by and between Defendants, or any agent thereof, which contain communications about the royalty payments made to lessor(s). Please note that this includes electronic communications.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 40:** Produce all Documents (see Definitions) by and between Defendants, or any agent thereof, which contain communications about the royalty

payments made to lessor(s) wherein the topic of charging expenses not permitted by one or more WV Leases was discussed.  Please note that this includes electronic communications.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 41:**  Produce all Documents (see Definitions) created by and/or maintained by one or more Defendants, or any agent thereof, which contain writings pertaining to the royalty payments made to lessor(s) wherein the topic of charging expenses not permitted by one or more WV Leases was discussed.  Please note that this includes electronic communications.

**RESPONSE:**



**ALLEN E. SMITH, individually and on behalf of all other persons and entities similarly situated,**
Plaintiff, By Counsel,


Timothy R. Linkous, Esquire (WVSB #8572)
Jenny L. Hayhurst, Esquire (WVSB #11752)
Linkous Law, PLLC
179 Hanalei Drive, Suite 100
Morgantown, WV 26508
(304) 554-2400
tim@linkouslawpllc.com

J. Michael Benninger, Esquire (WVSB #312)
Benninger Law, PLLC
P. O. Box 623
Morgantown, WV 26507
(304) 241-1856
mike@benningerlaw.com

## IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

**ALLEN E. SMITH, individually**
**and on behalf of all other persons**
**and entities similarly situated,**

        **Plaintiffs,**

**v.**

**JAY-BEE OIL & GAS, INC., a**
**West Virginia corporation;**
**JAY-BEE PRODUCTION COMPANY,**
**a West Virginia corporation;**
**JB EXPLORATION I, LLC, a**
**West Virginia limited**
**liability company; JAY-BEE**
**ROYALTY, LLC, a West Virginia**
**limited liability company;**
**RANDALL J. BRODA; and any other**
**person or entity affiliated with,**
**interested in, or claiming any right or**
**benefit of the subject leases,**

        **Defendants.**

**Civil Action No. 20-C-2**
**Hon. Judge Hummel**

### Certificate of Service

I hereby certify that on the **17**th day of **March 2020**, I served the foregoing *Plaintiff's First Set of Combined Discovery to Defendants* upon the parties hereto by depositing a true and correct copy thereof in the United States mail, postage prepaid, in an envelope addressed to the following party or counsel of record:

*Counsel for Defendants:*
Joseph L. Jenkins (WVSB #9680)
General Counsel, Jay-Bee Companies
75 Crosswind Drive
Bridgeport, West Virginia 25330
jjenkins@jaybeeoil.com

Timothy R. Linkous (WV Bar #8572)
Jenny L. Hayhurst (WV Bar #11752)
*Linkous Law, PLLC*

Page **15** of **15**

IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

**ALLEN E. SMITH,**

      **Plaintiff,**

**v.**
                                           **Civil Action No. 20-C-2 H**
                                           **Honorable David W. Hummel, Jr.**

**JAY-BEE OIL & GAS, INC.,**
**JAY-BEE PRODUCTION COMPANY,**
**JB EXPLORATION I, LLC,**
**JAY-BEE ROYALTY, LLC, and**
**RANDALL J. BRODA,**

      **Defendants.**

## <u>OFFER TO ALLOW JUDGMENT</u>

COME NOW Jay-Bee Oil & Gas, Inc., Jay-Bee Production Company, JB Exploration I, LLC and Jay-Bee Royalty, LLC (collectively the "Defendants"), by counsel, and pursuant to Rule 68 of the West Virginia Rules of Civil Procedure hereby affords Notice of said Defendants' intent, willingness and offer to allow judgment to be taken by Plaintiff against said Defendants as follows:

1.     Defendants will refund Plaintiff all deductions taken from Plaintiff's royalties under the oil and gas lease between Plaintiff and Defendant JB Exploration I, LLC, the memorandum of which is recorded in the Office of the Clerk of Tyler County in Book 578, at Page 63 (the "Smith Lease"), and will be calculated up to and include the date of acceptance of this offer. As of March 15, 2020, the deductions totaled **$26,585.29**.

2.     Defendants will pay simple interest at 4.75% on the amount calculated under paragraph one.

3.     Defendants will pay Plaintiff's reasonable attorney fees and costs.

4.     Defendants, after the date of acceptance and for as long as the Smith Lease's current royalty terms are operative, will not deduct costs from Plaintiff's royalties under the Smith Lease.

5.      Entry of a Dismissal Order with Prejudice upon acceptance and payment of the offer set forth herein.

Respectfully submitted,
**JAY-BEE OIL & GAS, INC.,**
**JAY-BEE PRODUCTION COMPANY,**
**JB EXPLORATION I, LLC,** and
**JAY-BEE ROYALTY, LLC**
By Counsel,

By: _____
Joseph L. Jenkins (W.Va. Bar No. 9680)
General Counsel, Jay-Bee Companies
75 Crosswind Drive
Bridgeport, West Virginia 25330
Phone: 304.933.3878
Fax: 304.933.3879
Email: jjenkins@jaybeeoil.com

## IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

**ALLEN E. SMITH,**

      **Plaintiff,**

**v.**                                                                    **Civil Action No. 20-C-2 H**
                                                  **Honorable David W. Hummel, Jr.**

**JAY-BEE OIL & GAS, INC.,**
**JAY-BEE PRODUCTION COMPANY,**
**JB EXPLORATION I, LLC,**
**JAY-BEE ROYALTY, LLC, and**
**RANDALL J. BRODA,**

      **Defendants.**

### CERTIFICATE OF SERVICE

      I, Joseph L. Jenkins, do hereby certify that on this **1st** day of **May, 2020**, I served a copy of

the foregoing **Offer to Allow Judgment** via U.S. Mail, postage prepaid upon the following:

Timothy R. Linkous, Esq.                          J. Michael Benninger, Esq.
Jenny L. Hayhurst, Esq.                           Benninger Law, PLLC
Linkous Law, PLLC                                 P. O. Box 623
179 Hanalei Drive, Suite 100                      Morgantown, WV 26507
Morgantown, WV 26508


By: _____
     Joseph L. Jenkins (W.Va. Bar No. 9680)

IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

ALLEN E. SMITH, individually
and on behalf of all other
persons and entities similarly
situated,

    **Plaintiffs,**

v.

JAY-BEE OIL & GAS, INC., a
West Virginia corporation;
JAY-BEE PRODUCTION COMPANY,
a West Virginia corporation;
JB EXPLORATION I, LLC, a
West Virginia limited
liability company; JAY-BEE
ROYALTY, LLC, a West Virginia
limited liability company;
RANDALL J. BRODA; and any other
person or entity affiliated with,
interested in, or claiming any
right or benefit of the subject
leases,

    **Defendants.**

Civil Action No. 20-C-2 H
Hon. Judge David W. Hummel, Jr.

---

## PLAINTIFF'S MOTION FOR EMERGENCY HEARING

---

  **NOW COMES** Plaintiff Allen E. Smith ("Plaintiff"), by counsel, and moves this Honorable Court for an Order setting Plaintiff's Motion for Protective Order, to be filed and served *via* email by noon on May 22, 2020, for an emergency hearing Tuesday May 26, 2020 in the afternoon while the Court is in session in Tyler County, West Virginia.

  Plaintiff and his counsel have become aware of the following: (1) Defendants, directly or indirectly, have communicated with Plaintiff and other persons who would be and/or are putative class members; (2) the subject of the communications has been to attempt to achieve resolution

Page **1** of **3**

of this civil action without fully informing Plaintiff or putative class members of their rights; and (3) it is required that this Court become fully aware and apprised of the conduct and the impact on the rights of Plaintiff and all putative class members so that appropriate action can be taken.

The communications described herein appear to be on their face and can be reasonably characterized as being false, misleading, and/or confusing, and they implicate a number of rights and responsibilities under West Virginia law. Therefore, Plaintiff asserts that a protective order is proper under the West Virginia Rules of Civil Procedure as well as the case law addressing this issue. A proposed Order is being tendered with this Motion.

**WHEREFORE**, for the reasons set forth above, Plaintiff requests an expedited hearing and such other and further relief as the Court deems just and proper.

**ALLEN E. SMITH, individually
and on behalf of all other
persons and entities similarly
situated,**
Plaintiff,
By Counsel,

Timothy R. Linkous, Esquire
(WVSB #8572)
Jenny L. Hayhurst, Esquire
(WVSB #11752)
Linkous Law, PLLC
179 Hanalei Drive, Suite 100
Morgantown, WV 26508
(304) 554-2400
tim@linkouslawpllc.com

J. Michael Benninger, Esquire
(WVSB #312)
Benninger Law, PLLC
P. O. Box 623
Morgantown, WV 26507
(304) 241-1856
mike@benningerlaw.com

Page **2** of **3**

## IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

**ALLEN E. SMITH, individually**
**and on behalf of all other**
**persons and entities similarly**
**situated,**

              **Plaintiffs,**

**v.**

**JAY-BEE OIL & GAS, INC., a**
**West Virginia corporation;**
**JAY-BEE PRODUCTION COMPANY,**
**a West Virginia corporation;**
**JB EXPLORATION I, LLC, a**
**West Virginia limited**
**liability company; JAY-BEE**
**ROYALTY, LLC, a West Virginia**
**limited liability company;**
**RANDALL J. BRODA; and any other**
**person or entity affiliated with,**
**interested in, or claiming any**
**right or benefit of the subject**
**leases,**

              **Defendants.**

**Civil Action No. 20-C-2 H**
**Hon. David W. Hummel, Jr.**

---

### Certificate of Service

---

I hereby certify that on the 21st day of **May 2020**, I served the foregoing *Plaintiff's Motion for Emergency Hearing* upon the parties hereto by email and by depositing a true and correct copy thereof in the United States mail, postage prepaid, in an envelope addressed to the following party or counsel of record:

*Counsel for Defendants:*
Joseph L. Jenkins (WVSB #9680)
General Counsel, Jay-Bee Companies
75 Crosswind Drive
Bridgeport, West Virginia 25330
jjenkins@jaybeeoil.com

Timothy R. Linkous (WV Bar #8572)
Jenny L. Hayhurst (WV Bar #11752)
*Linkous Law, PLLC*

Page **3** of **3**

IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

**ALLEN E. SMITH, individually**
**and on behalf of all other**
**persons and entities similarly**
**situated,**

             **Plaintiffs,**

**v.**
                                **Civil Action No. 20-C-2 H**
                                **Hon. Judge David W. Hummel, Jr.**

**JAY-BEE OIL & GAS, INC., a West Virginia**
**corporation; JAY-BEE PRODUCTION COMPANY,**
**a West Virginia corporation; JB EXPLORATION I, LLC, a**
**West Virginia limited liability company; JAY-BEE**
**ROYALTY, LLC, a West Virginia limited liability company;**
**RANDALL J. BRODA; and any other person or entity affiliated with,**
**interested in, or claiming any right or benefit of the subject leases,**

             **Defendants.**

---

**ORDER GRANTING**
**PLAINTIFF'S MOTION FOR EMERGENCY HEARING**

---

       On the 21st day of May 2020, Plaintiff moved this Court for an emergency hearing on Plaintiff's Motion for Protective Order which will be filed and served *via* email by noon on May 22, 2020. The Court **FINDS** good cause to hold an expedited hearing, and, therefore, the Court hereby **ORDERS** that this matter shall come for a hearing in the Circuit Court of Tyler County, West Virginia on May 26, 2020 at _____ p.m. at which time the Court will hear Plaintiff's said Motion.

       Entered this _____ day of May 2020.

                                         _____
                                         **Hon. Judge David W. Hummel, Jr.**

*Counsel tendering this Order:*

_____
Timothy R. Linkous, Esquire

Page **1** of **2**

(WVSB #8572)
Jenny L. Hayhurst, Esquire
(WVSB #11752)
Linkous Law, PLLC
179 Hanalei Drive, Suite 100
Morgantown, WV 26508
(304) 554-2400
tim@linkouslawpllc.com
*Counsel for Plaintiff*

IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

ALLEN E. SMITH, individually
and on behalf of all other
persons and entities similarly
situated,

        Plaintiffs,

v.

                                         Civil Action No. 20-C-2 H
                                         Hon. Judge David W. Hummel, Jr.

JAY-BEE OIL & GAS, INC., a West Virginia
corporation; JAY-BEE PRODUCTION COMPANY,
a West Virginia corporation; JB EXPLORATION I, LLC,
a West Virginia limited liability company; JAY-BEE
ROYALTY, LLC, a West Virginia limited liability company;
RANDALL J. BRODA; and any other person or entity
affiliated with, interested in, or claiming any right or benefit
of the subject leases,

        Defendants.

---

## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

---

    **NOW COMES** Plaintiff Allen E. Smith ("Plaintiff"), by counsel, and moves this Honorable Court for a Protective Order limiting Defendants' communications with Plaintiff and putative class members to business issues other than settlement discussions related to the claims presented in this civil action, and requiring Defendants to correct prior false, misleading, and/or confusing communications to putative class members.   The Defendants have, directly or indirectly, communicated with Plaintiff and putative class members in a manner that is either false, misleading, and/or confusing such that the entry of an Order regarding this matter is necessary. By way of example, Plaintiff attaches, as **Exhibit A[1]**, one such communication which

---

[1] Exhibit A is redacted to protect the financial information and address of the putative class member.  Should the Court desire to see an unredacted copy of the same, Plaintiff's counsel will provide the same to the Court for an *in camera* inspection.

clearly misrepresents West Virginia law to a putative class member in an effort to compromise the rights of that putative class member.

This Court has jurisdiction and authority to enjoin this activity pursuant to the West Virginia Rules of Civil Procedure, including, but not limited to, Rules 26(c), 16(c)(12), and 23(d). Plaintiff and the class will be irreparably harmed by Defendants' conduct, which is designed to avert class certification and to compromise the rights of the putative class members, if Defendants are permitted to communicate false, misleading, and/or confusing statements to putative class members regarding their rights.

**WHEREFORE**, for the reasons set forth above as well as in the memorandum of law below, Plaintiff respectfully moves this Court for: (1) a Protective Order directing Defendants to cease communications, directly or indirectly, with Plaintiff and putative class members that are false, misleading, and/or confusing relative to the matters set forth herein, including class members' claims presented in this action as well as improper deductions that were taken from their royalty payments; (2) a Protective Order requiring Defendants to correct prior communications that have been false, misleading, and/or confusing relative to the rights of putative class members asserted in this civil action; and (3) for such other and further relief as the Court deems just and proper.

ALLEN E. SMITH, **individually and on behalf of all other persons and entities similarly situated,**
Plaintiff, By Counsel,

Timothy R. Linkous (WVSB#8572)
**Linkous Law, PLLC**
179 Hanalei Drive, Suite 100
Morgantown, West Virginia 26508
(304) 554-2400
tim@linkouslawpllc.com

J. Michael Benninger (WVSB#312)
**Benninger Law, PLLC**
P. O. Box 623
Morgantown, West Virginia 26507
(304) 241-1856
mike@benningerlaw.com

Page **2** of 19

IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

ALLEN E. SMITH, individually
and on behalf of all other
persons and entities similarly
situated,

        Plaintiffs,

v.

                                          Civil Action No. 20-C-2 H
                                          Hon. Judge David W. Hummel, Jr.

JAY-BEE OIL & GAS, INC., a West Virginia
corporation; JAY-BEE PRODUCTION COMPANY,
a West Virginia corporation; JB EXPLORATION I, LLC,
a West Virginia limited liability company; JAY-BEE
ROYALTY, LLC, a West Virginia limited liability company;
RANDALL J. BRODA; and any other person or entity
affiliated with, interested in, or claiming any right or benefit
of the subject leases,

        Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

---

**NOW COMES** Plaintiff Allen E. Smith ("Plaintiff"), by counsel, and hereby tenders the following memorandum of law in support of Plaintiff's Motion set forth above.

### I.      Introduction

The foundation of this civil action is simple: the Defendants enticed Plaintiff and persons/entities similarly situated (hereinafter individually and collectively referred to as the "Class") to enter into leases concerning the development of mineral interests based upon a false promise that certain deductions would not be taken from royalty payments; the Class reasonably relied upon those representations to their detriment; Defendants entered into leases with the Class containing the promise not to take certain deductions; but, the Defendants nevertheless

took deductions improperly. Despite knowing that they were acting improperly, Defendants took no action to rectify their conduct or notify the Class.

On the 17th day of January 2020, Plaintiff filed this civil action against the Defendants arising out of their wrongful conduct. Thereafter, a third party approached and informed Plaintiff that Defendants were willing to resolve his claims for a specific sum of money. (**Exhibit B**, correspondence from Plaintiff's counsel to Defendants' counsel). Following that communication, Defendants contacted one or more putative class members with false, misleading, and/or confusing communications concerning the subject matter of this civil action. (**Exhibit A**). Rather than simply paying putative class members for costs and expenses that were improperly deducted from their royalty payments, the said communication contained misstatements of West Virginia law in an effort to coerce putative class members to sign a release of liability. This Court should not permit Defendants to contact putative class members with misrepresentations upon which putative class members will rely to their detriment, and a Protective Order is necessary to protect the integrity of the legal system as well as the rights of putative class members.

## II.  Discussion of Law

Clearly, the matter before this Court requires a Protective Order not only to protect the integrity of the legal process, but also to protect the rights of putative class members. Rules 16 and 26(c) of the West Virginia Rules of Civil Procedure prove this Court with the authority to prevent Defendants from communicating with Plaintiff and putative class members in a manner which is false, misleading, or confusing.

Defendants' conduct and communications are not only false, misleading, and/or confusing, but they are specifically designed to reduce their own liability by hoping to settle

putative class members' claims without the benefit and guidance of class counsel and the Court; all in contravention of the purposes of W.Va.R.Civ.P. 16, 23, and 26. Rule 23(d) of the West Virginia Rules of Civil Procedure provides, in pertinent part:

> **Orders in conduct of actions.** In the conduct of actions to which this rule applies, the court may make appropriate order: ... (2) requiring, for **the protection of the members of the class or otherwise for the fair conduct of the action,** that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on the representative parties or on intervenors; ... (5) dealing with similar procedural matters. The order may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time.

Rule 16 provides this Court with authority to hold pretrial conferences as well as scheduling and management conferences and to enter all appropriate orders for the handling, control, and management of such cases, including the control and scheduling of discovery and the utilization of early resolution proceedings. W.Va.R.Civ.P. 16. In conjunction with the provisions of Rule 16, Rule 26(f) provides for discovery planning conference of the parties during which the "possibilities for a prompt settlement or resolution of the case" is discussed and appropriate recommendations for the timing, form and requirements of discovery are proposed, including, but not limited to, "whether discovery should be conducted in phases or be limited to or focused upon particular issues." W.Va.R.Civ.P. 26(f).

Rule 23(e) provides for court approval of all settlements or compromises of any claims, issues, or defenses of a certified class and obligates the court to provide reasonable notice to all members of the class of the proposed settlement and to hold a hearing during which the fairness, reasonableness and adequacy of the settlement is determined and any objection to the settlement is considered.

There can be no dispute that this Court has the authority to enter orders pursuant to the above Rules and thereafter to enter orders to compel their observance and to award sanctions for their violations.   W.Va.R.Civ.P. 16(f) ("If a party or party's attorney fails to obey a scheduling or pretrial order, . . . or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), and (D). . . ."). *See Luma Corp. v. Stryker Corp.*, 226 F.R.D. 536, 541-42 (S.D.W.Va. 2005) (discussing terms and applicability of Rules 16(f) and 37(b)); *United States v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003) ("Rule 16(f) sanctions were 'designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation.'" (quoting *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)).

In discussing the authority of federal courts[2] pursuant to Rule 23(d) to enter orders providing limitations on communications by parties and their counsel to prospective class members in a case where class certification had not yet been decided, the United States Supreme Court held:

> Class actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases. **Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.** But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules. . . .
>
> \* \* \*
>
> Because of these potential problems, an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the

---

[2] The Supreme Court of Appeals has always given "substantial weight" to federal cases when determining the meaning and scope of the West Virginia Rules of Civil Procedure. *SER Ball v. Cummings*, 208 W.Va. 393, 399, 540 S.E.2d 917 (1999).

Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing-identifying the potential abuses being addressed-should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances...

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-102, 101 S.Ct. 2193, 2199-2201, 68 L.Ed.2d 693 (1981) (emphasis added; footnotes and citations omitted).

Although the district court's order which the Supreme Court found to constitute an abuse of discretion in *Gulf Oil Co. v. Bernard*, *supra*, imposed sweeping limitations on plaintiffs' class counsels' ability to communicate with prospective members of their own proposed class, courts have utilized its framework in discussing whether orders may be entered limiting communications between defendants and/or defense counsel and members of a plaintiff class in cases where the classes have already been certified as well as in cases where certification of the classes have not yet been decided.[3]

For instance, in the case of *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), the plaintiffs had filed a proposed class action alleging claims of fraud, RICO, and breach of contract against the First National Bank of Atlanta. Prior to the issuance of approved class action notice required by Fed.R.Civ.P. 23(c)(2), "the Bank had seized upon the idea of soliciting class exclusion requests as a means to reducing it potential liability and quelling the adverse publicity the lawsuit had spawned." *Kleiner*, 751 F.2d at 1197. Upon plaintiffs' counsel learning of such scheme and notifying the district court, the court entered orders restricting

---

[3] It should also be noted that the solicitations in *Bernard*, which the *en banc* panel of the Fifth Circuit had sought to protect by overturning the district court's order, constituted protected, non-commercial political expression which called in called "into play the full panoply of First Amendment safeguards against prior restraint." *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 473 (5th Cir. 1980) (*en banc*). Such solicitations in *Bernard* "qualified as protected political expression . . . because [NAACP] counsel for plaintiffs had no direct financial stake in the case and because the case was a vehicle for expressing the political beliefs of the NAACP." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1205 n. 24 (11th Cir. 1985) (citing *Bernard v. Gulf Oil Co.*, 619 F.2d at 472-73)).

communications with class members and setting an evidentiary hearing on the matter in the nature of a disciplinary proceeding.

The district court ultimately concluded that the defendants' campaign constituted an illegal opt-out scheme, violated protective and class notice orders entered by the court, and that the defendant Bank and its counsel had acted in bad faith. The district court imposed monetary sanctions on defense counsel and assessed attorney fees and costs on the defendant and defense counsel incident to class notice and the disciplinary proceeding. Defense counsel were also disqualified from further representation in the case and the exclusion requests were deemed voidable following entry of judgment. *Kleiner*, 751 F.2d at 1197-99.

On appeal, the Circuit Court of Appeals for the Eleventh Circuit found that the opt-out campaign had violated protective and class notice orders which had been entered by the district court. The Court explained:

> The events of this case draw into question the lower court's authority under the federal rules or statutes to forbid defense contacts with the plaintiff class for the purpose of eliciting exclusion requests. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981).
>
> * * *
>
> When confronted with claims pressed by a plaintiff class, **it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests.** *See* Comment, *Restrictions on Communications By Class Action Parties and Attorneys*, 1980 Duke L.J. 360, 363. **Such conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purpose of the rule...**
>
> **A unilateral communications scheme, moreover is rife with potential for coercion. "[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive."** Note, *Developments in the Law-Class Actions*, 89 Harv.L.Rev. 1318, 1600 (1976)...
>
> In view of the tension between the preference for class adjudication and the individual autonomy afforded by exclusion, **it is critical that the class receive accurate and impartial information regarding the status, purposes and effects of the class action.** This is especially important since the court must not

Page **8** of **19**

consider the probable outcome of the case in passing on class certification. The "best practicable notice" envisioned by the Rule is notice that conveys objective, neutral information about the nature of the claim and the consequence of proceeding as a class…

**Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable…** Concomitantly, a solicitations scheme relegates the essential supervision of the court to the status of an "afterthought." … In this case, the carefully constructed edifice of check and countercheck, notice and reply, was obliterated when the telephones were lifted from their cradles. **The Bank's actions obstructed the district court in the discharge of its duty to "protect both the absent class and the integrity of the judicial process by monitoring the actions before it." The Bank's subterfuge and subversion constituted an intolerable affront to the authority of the district court to police class member contacts. Accordingly, we hold that the trial court had ample discretion under Rules 23(b)(3) and 23(d) to prohibit the Bank's overtures.**

*Kleiner*, 751 F.2d at 1201-03 (emphases added; citations and footnotes omitted).

The Court in *Kleiner* also rejected claims that prohibiting the defendants from having communications with potential class members constituted prior restraint in violation of the First Amendment to the United States Constitution. Defendant Bank had argued in such regard that the district court's rulings prohibiting such communications "were neither specific nor 'narrowly tailored to address an immediate, compelling danger' in conformance with Bernard v. Gulf Oil Co., 619 F.2d 459 (5th Cir. 1980) (*en banc*), *aff'd.* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). *Kleiner*, 751 F.2d at 1203.

The Court noted that "'it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'" *Id.* (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S.Ct. 684, 690, 93 L.Ed. 834 (1949)). The Court also acknowledged that the defendant Bank's "speech was an expression of a

Page **9** of 19

commercial variety," which receives only "limited first amendment protection consonant with its role in assuring the proper allocation of resources and the formation of informed decisions." *Id.* at 1203-04 (citing *Virginia State Board of Pharmacy v. Virginia Citizens Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976)).

Moreover, the Kleiner Court opined:

> As a threshold matter, **untruthful or misleading speech has no claim on first amendment immunity.** *Central Hudson Gas Co. v. Public Service Commission,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980); *Virginia Pharmacy Board,* 425 U.S. at 771, 96 S.Ct. at 1830. Commercial speech merits constitutional safeguards only to the extent it is accurate, in keeping with its purpose of insuring the free flow of reliable information crucial to independent decision making. **No constitutional objection thus inheres in banning "forms of [commercial] communications more likely to deceive the public than to inform it."** *Central Hudson,* 447 U.S. at 563, 100 S.Ct. at 2350 (citations omitted). Commercial speech that is protected is legitimately subject to stricter governmental regulations than that allowed for noncommercial expression,... consistent with the "subordinate position in the scale of First Amendment values" assigned to commercial speech. *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978).

Kleiner, 751 F.2d at 1204 (emphases added; citations omitted). The Court then concluded:

> In general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy first amendment concerns if it is grounded in good cause and issued with a "heightened sensitivity" for first amendment concerns. In ascertaining the existence of good cause, four criteria are determinative: the severity and the likelihood of the perceived harm; the precision with which the order is drawn; the availability of a less onerous alternative; and the duration of the order...

> Consistent with the Supreme Court's clear concern with ensuring the effective regulation of advertising and other forms of solicitation, **it is unnecessary for a trial court to issue particularized findings of abusive conduct when a given form of speech is inherently conducive to overreaching and duress.** The Supreme Court has acknowledged that unsupervised oral solicitations, by their very nature, are wont to produce distorted statements on the one hand and the coercion of susceptible individuals on the other. Under such circumstances, **"the absence of explicit proof or findings of harm or injury is immaterial,"** [*Ohralik*], at 468, 98 S.Ct. at 1924, **and the trial court is empowered to enter prophylactic orders designed to prevent harm before**

it happens...   **The Bank's telephone solicitation canvass is a classic example of a major potential abuse which necessitates restraint...**

In the realm of litigation, a fair and just result often presupposes restraints on the speech of the parties... **Inroads on the principle forbidding the solicitation of exclusion requests in 23(b)(3) class actions could spell the ultimate extinction of that form of relief.** Given the inherent coercion conveyed by the Bank's covert campaign, we agree that the district court possessed the authority to regulate such contacts without the predicate record and findings required in *Bernard.*

The trial court's order was narrowly drawn to avoid suppressing utterances worthy of first amendment protection. As a directive addressed to counsel for the Bank, **the ambit of the order was restricted to communications regarding the litigation. The order thus did not impinge on the Bank's ability to speak with customers about routine business matters unrelated to the lawsuit.** Since defense counsel had an ethical duty to refrain from discussing the litigation with members of the class as of the date of class certification, if not sooner, the order in no way tread on legitimate communications by counsel.

Kleiner, 751 F.2d at 1205-07 (emphases added; citations and footnotes omitted).  As to defense

counsel's ethical duty, the Court further noted:

The duty arises from Rule 4.2 of the ABA Model Rules of Professional Conduct (1983) (former version at Disciplinary Rule 7-104), which provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so."

At a minimum, class counsel represents all class members as soon as a class is certified. *Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n. 15 (2d Cir. 1978), *aff'd*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); if not sooner, *see Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978), *aff'd sub nom. Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

The Court below correctly concluded that the solicitation of exclusions constitutes a "per se" abuse. Under the circumstances, the court was justified in denying the Bank discovery of class members for purposes of rebutting the charges of coercion.

*Kleiner*, 751 F.2d at 1207 n. 28.

Page 11 of 19

While *Kleiner*, itself, involved a situation where certain claims had already been certified for class action treatment, numerous other courts have held that restrictions may be placed on a defendant's communication with potential class members in proposed plaintiff class actions not yet certified, particularly where the defendant has an ongoing business relationship with such class members in light of the significant potential for coercion inherent in such relationships. *Burrell v. Crown Central Petroleum, Inc.*, 176 F.R.D. 239, 243-44 (E.D.Tex. 1997) ("**Unlimited contacts by defendants with class members or potential class members may serve to undermine the purposes of Rule 23, by allowing defendants to reduce their liability by encouraging potential class members not to join the litigation.** Therefore, under the circumstances presented here, **where an alleged class action has been filed but certification has not yet been decided, a court may issue a limitation on** *ex parte* **contact under Rule 23, if it is clear the defendant is attempting to engage in conduct which would undermine the purposes of the rule.**"; also noting that "an ongoing business relationship … may cause communications between litigants to be coercive … [and] that where there is a relationship that is inherently coercive, the court need not make a finding that a particular abuse has occurred… [but concluding] the cases do not eradicate the requirement of a clear record of *threatened* abuses." (bold emphases added; citations omitted)); *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 678 (N.D.Ga. 1999) ("Coca-Cola has not given the Court any reason to suspect that it will attempt to mislead its employees and coerce them into non-participation in this case. But simple reality suggests that the danger of coercion is real and justifies the imposition of limitations on Coca-Cola's communications with potential class members."; "**Regardless of whether these communications occur before or after class certification, the effect is still the same…**" (emphasis added; citations omitted)); *Ralph Oldsmobile, Inc. v. General Motors Corp.*, 2001

WL 1035132, at ** 2-4 (S.D.N.Y. September 7, 2001) ("a court's power to restrict communications between parties and potential class members, **apply even before a class is certified**... [A] finding of potential coercion is warranted here. [T]he potential class members depend upon the defendant for information, supplies, and credit. The record also warrants a finding of a potential for unknowing waivers resulting from a lack of information." (emphasis added)); *Rankin v. Bd. Of Educ. Wichita Public Schools*, 174 F.R.D. 695, 697 (D.Kan. 1997) (in case where defendants continued to provide educational services to speech- language impaired children, the court stated "[t]he only possible concern with unlimited communication would be if the defendants sought to directly lobby the prospective members of the class action concerning their possible participation in the class action, *should it be certified*. **There is no legitimate purpose for defendants to communicate with prospective members of the class concerning the lawsuit; such communications could invite abuse.**" (emphases added)); *Bublitz v. E.I. duPont de Nemours and Co.*, 196 F.R.D. 545, 546-50 (S.D. Iowa 2000) (in proposed class action which had not yet been certified, district court concluded that at least minimal restrictions should be placed on defendant's communications with potential members of class particularly in light of potentials for coercion and abuse which exist in ongoing employment relationship); *International House of Pancakes Franchise Litig.*, 1972 WL 519, at ** 1-2 (W.D. Mo. January 4, 1972) (court enjoining certain types of communications by defendant or its employees with class members in light of their coercive content regarding ongoing business relationship).

As explained in *Hampton Hardware, Inc. v. Cotter & Co. Inc.*, 156 F.R.D. 630 (N.D. Tex. 1994), a proposed class action which had not yet been certified:

> "Class actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases." *Gulf Oil*, 452 U.S. at 99, 100, 101 S.Ct. at 2199, 2200. **Due to possible abuses, a district court may enter orders in class**

actions which govern the conduct of counsel and parties. *Id.* Communications found violative of the principles of Rule 23 include misleading communications to the class members concerning the litigation. Communications that misrepresent the status or effect of the pending action also have been found to have a potential for confusion and/or to adversely affect the administration of justice. *Id.*, at 452 U.S. at 101 n. 12, 101 S.Ct. at 2200 n. 12. Courts have also condemned attempts in a communication to affect a class member's decision to participate in the litigation, or to undermine a class plaintiff's cooperation with confidence in class counsel. *In re School Asbestos Litigation*, 842 F.2d 671, 682 n. 23 (3rd Cir. 1988). Letters to class members warning them that they might be liable for costs should they participate in the class action and urging them to disassociate themselves from the suit have also been held improper. *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 845 (2nd Cir. 1980).

* * *

The first issue to be determined in this case is whether the [communications] constitute the type of misleading communications justifying court intervention. Regardless of the stated purposes of the letters-a routine dissemination of information to members-any common sense reading of them reveals that they are an attempt to prevent member participation in the class action...

**The fact that the defendant and potential class members are involved in an on-going business relationship, further underscores the potential for coercion.** *Kleiner*, 751 F.2d at 1202 (other citations omitted). Members must necessarily rely upon the defendant for dissemination of factual information regarding hardware goods and for lower prices in purchasing those goods. They are therefore particularly susceptible to believing the defendant's comments that the lawsuit will cost them money. Cotter, on the other hand, **an interested party in the litigation faces a conflict of interest in advising members on the merits of participation in the lawsuit due to its direct pecuniary interest in the outcome.**

. . . **Actual harm need not be proven to justify an order limiting class contacts.** Rather, an order limiting contacts is justified upon a finding of "a likelihood of serious abuses." . . . **That the interests embodied in Rule 23 might be hindered is a sufficient finding upon which to base an order limiting contacts.** "Rule 23 expresses 'a policy in favor of having litigation in which common interests, or common questions of law or fact prevail, disposed of where feasible in a single lawsuit.'" *Gulf Oil*, 452 U.S. at 99 n. 11, 101 S.Ct. at 2199. n. 11. **The [communications] work directly against this principle by attempting to reduce the class members participation in the lawsuit based on threats to their pocketbooks. For all of these reasons, communications by Cotter to the members regarding the lawsuit must be prohibited.**

* * *

> In framing the order, care must be taken to limit speech as little as possible. However, as with *Kleiner, supra,* **this case does not involve the type of protected, non-commercial political expression protected by the Fifth Circuit in** ***Gulf Oil***. *Kleiner,* 751 F.2d at 1204-05. Rather the communications at issue here, involve commercial speech which does not call "into play the full panoply of First Amendment safeguards against prior restraint". *Id.* at 1205 citing *Bernard Gulf Oil Co.,* 619 F.2d 459, 473 (5th Cir. 1980). **Rather, the type of speech involved in this case, encouraging potential class members not to join in the suit, is grounded in the "economic interests of the speaker and the audience."** Id. at 1203 n. 22 (other citations omitted). **Orders limiting this type of commercial speech are appropriate if "grounded in good cause and issued with a 'heightened sensitivity' for First Amendment concerns."** *Id. . . .*

*Hampton Hardware,* 156 F.R.D. at 632-33 (emphases added; citations omitted).

The precise issue of whether putative class members are represented by class counsel and whether defense counsel is prohibited from contacting such putative class members by Rule 4.2 of the Rules of Professional Conduct was discussed in *Dondore v. NGK Metals Corp.,* 152 F. Supp.2d 662 (E.D.Pa. 2001). More specifically, in *Dondore,* defense counsel who was involved in individual federal lawsuits filed a motion essentially seeking leave to engage in informal discovery by contacting potential fact witnesses who were putative class members in a class action which had been filed in state court and which involved essentially the same liability claims as the individual federal actions. In denying defense counsel's motion, the United States District Court for the Eastern District of Pennsylvania explained:

> The current dispute requires this court to interpret and apply Rule 4.2 of the Pennsylvania Rules of Professional Conduct. The rule, which has been adopted by this court, provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Pa. Rules Prof'l Conduct R. 4.2; E.D.Pa.R.Civ.P. 83.6, R. IV.
>
> * * *
>
> We therefore turn to the question whether the persons identified as potential fact witnesses in the individual federal lawsuits are represented by the lawyer for the named plaintiffs in the state court action by virtue of their status as putative class members. In the federal context, the Supreme Court has stated that a class action is "a truly representative suit" and that "class action representation"

Page **15** of 19

belongs to all parties, even "asserted class members who were unaware of the proceedings brought in their interest." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551-52, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Furthermore, putative class members stand at least in a fiduciary relationship with class counsel. *In re Gen. Motors Corp. Pick- Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995).

The mere initiation of a class action extends certain protections to potential class members, who have been characterized by the Supreme Court as "passive beneficiaries of the action brought in their behalf." They have no "duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome" until the issue of class certification has been determined. *Am. Pipe & Constr. Co.*, 414 U.S. at 552, 94 S.Ct. 756. For example, the filing of a class action tolls the statute of limitations even for those who were unaware of the action and did not rely on it in refraining from filing their own motions for individual intervention or joinder. Id. at 551, 94 S.Ct. 756. Protecting the interests of putative class members in this manner is necessary to meet the goal of a class action lawsuit-to "provide [ ] a fair and efficient method for adjudication of the controversy." Id. (quoting Fed.R.Civ.P. 23(b)(3)).

Under Pennsylvania law, putative class members are "properly characterized as parties to the action." *Bell v. Beneficial Consumer Disc. Co.*, 4654 Pa. 225, 348 A.2d 734, 736 (1975)... Thus, during the interim between the filing of the action and the certification of the class, "unnamed class members do have certain interests in the lawsuit. They may challenge the adequacy of representation by the plaintiff; in some circumstances, they may have a right to be informed of, or to be included in, a settlement; and, perhaps most importantly, the statute of limitations may be tolled during the period." *Miller v. Federal Kemper Ins. Co.*, 352 Pa.Super. 581, 508 A.2d 1222, 1228 (1986) (quoting *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1087 (3d Cir. 1980))...

The "truly representative" nature of a class action suit affords its putative members of certain rights and protections including, we believe, the protections contained in Rule 4.2 of the Rules of Professional Conduct. *Am. Pipe & Constr. Co.*, 414 U.S. at 551, 94 S.Ct. 756. "The purpose of Rule 4.2 is to prevent lawyers from taking advantage of uncounselled lay persons and to preserve the efficacy and sanctity of the lawyer-client relationship." *Carter-Herman v. City of Phila.*, 897 F. Supp. 899, 901 (E.D.Pa. 1995) (citing G.C. Hazard, Jr. & W.W. Hodes, *The Law of Lawyering* 730 (2d ed. 1990); C.W. Wolfram, *Modern Legal Ethics §* 11.6 at 612-13 (1986)). As a practical matter, a court cannot decide the issue of class certification immediately upon the filing of the complaint. Discovery is often required and the preparation and study of briefs is necessary. Thus, certain benefits must be afforded the putative class members in the interim. As the tolling of the statute of limitations is needed to further the salutary purposes of class actions, restraints are likewise needed against communications with putative class members until the issue of class certification can be determined. If defense

Page **16** of 19

counsel or counsel otherwise adverse to their interests is allowed to interview and take statements from often unsophisticated putative class members without the approval of counsel who initiated the action, the benefits of class action litigation could be seriously undermined. If Cabot's position were correct, putative class members could hardly be described as even "passive beneficiaries" of an asserted class action. *See Am Pipe & Constr. Co.*, 414 U.S. at 552, 94 S.Ct. 756.

*Dondore v. NGK Metals Corp.*, 152 F. Supp.2d at 664-66.

So not only do the West Virginia Rules of Civil Procedure support this Motion, but, as is clearly evident, many decisions from Courts around the country do as well.

### III.   Conclusion

In this particular situation, Defendants have already, directly and indirectly, communicated with Plaintiff and putative class members. Unfortunately, as can be seen by the attachments to this Motion, Defendants have misrepresented West Virginia law such that their communications are unequivocally false, misleading, and confusing. Though Defendants continue to recognize their obligation to pay putative class members for improper deductions, rather than meet their obligations they have elected to subvert this civil action as well as confuse putative class members as to their rights.

Defendants have demonstrated, now on multiple occasions, that there is a very legitimate reason for Plaintiff, putative class members, and this Court to be skeptical about the nature and veracity of Defendants' communications. As such, a Protective Order is clearly necessary to not only protect the integrity of this process, but also to protect the rights of putative class members. Further, a Protective Order should issue requiring Defendants to disclose the communications with putative class members, and to take specific actions to correct the misrepresentations therein.

**WHEREFORE**, for the reasons set forth herein, Plaintiff requests that this Court issue a Protective Order as described above, and render any and all further relief as the Court deems just and proper.

> **ALLEN E. SMITH, individually and on behalf of all other persons and entities similarly situated,**
> Plaintiff, By Counsel,
>
>
> Timothy R. Linkous, Esquire
> (WVSB #8572)
> Jenny L. Hayhurst, Esquire
> (WVSB #11752)
> Linkous Law, PLLC
> 179 Hanalei Drive, Suite 100
> Morgantown, WV 26508
> (304) 554-2400
> tim@linkouslawpllc.com
>
> J. Michael Benninger, Esquire
> (WVSB #312)
> Benninger Law, PLLC
> P. O. Box 623
> Morgantown, WV  26507
> (304) 241-1856
> mike@benningerlaw.com

IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

**ALLEN E. SMITH, individually**
**and on behalf of all other**
**persons and entities similarly**
**situated,**

                    **Plaintiffs,**

**v.**                                             **Civil Action No. 20-C-2 H**
                                                  **Hon. David W. Hummel, Jr.**
**JAY-BEE OIL & GAS, INC., a**
**West Virginia corporation;**
**JAY-BEE PRODUCTION COMPANY,**
**a West Virginia corporation;**
**JB EXPLORATION I, LLC, a**
**West Virginia limited**
**liability company; JAY-BEE**
**ROYALTY, LLC, a West Virginia**
**limited liability company;**
**RANDALL J. BRODA; and any other**
**person or entity affiliated with,**
**interested in, or claiming any**
**right or benefit of the subject**
**leases,**

                    **Defendants.**

---

### Certificate of Service

---

I hereby certify that on the **21**st day of **May 2020**, I served the foregoing *Plaintiff's Motion for Protective Order* upon the parties hereto by email and by depositing a true and correct copy thereof in the United States mail, postage prepaid, in an envelope addressed to the following party or counsel of record:

*Counsel for Defendants:*
Joseph L. Jenkins (WVSB #9680)
General Counsel, Jay-Bee Companies
75 Crosswind Drive
Bridgeport, West Virginia 25330
jjenkins@jaybeeoil.com

                                        _____
                                        Timothy R. Linkous (WV Bar #8572)
                                        Jenny L. Hayhurst (WV Bar #11752)
                                        *Linkous Law, PLLC*

Page 19 of 19



jjenkins@jaybeeoil.com

### JAY-BEE COMPANIES

May 12, 2020

Re:    **Refund of Post-Production Costs**
       **Tyler & Doddridge Counties**
       **Oil and Gas Lease at**

Dear

Upon review of our records, it has come to our attention that post-production costs were allocated to your royalty payments. To reconcile your account, we have enclosed a check in the amount of $          , which is a refund of all the post-production costs withheld from your royalty plus interest. Furthermore, we have corrected our records to ensure that, going forward, no post-production costs will be allocated to your royalty.

In exchange for the enclosed check, we ask that you execute a release prior to depositing the funds. Therefore, please find enclosed two copies of a release. One copy is for your records. Please sign, notarize, and return the second copy in the enclosed self-addressed stamped envelope. If you do not agree with the release, then please return the check in the self-addressed stamped envelope. If you deposit the check and do not execute the release, you nonetheless agree that the payment is full accord and satisfaction for all post-production costs withheld from your royalty.

We apologize for the inconvenience and very much appreciate your attention to this matter. Should you have any questions, please do not hesitate to contact us.

Best regards,

Joseph L. Jenkins
General Counsel

Enclosures as stated.

**EXHIBIT**

A

Jay-Bee Companies
75 Crosswind Drive  ●  Bridgeport, WV 26330  ●  P:304-933-3878  ●  F:304-933-3879

## UNRECORDED RELEASE, RATIFICATION AND RECONCILIATION
## OF OIL AND GAS LEASE

This Unrecorded Release, Ratification and Reconciliation of Oil and Gas Lease (this "Agreement") entered into this _____ day of _____, 2020, by and between _____ whose mailing address is _____ WV _____ ("Lessor"), and **JB Exploration I, LLC**, whose mailing address is 3570 Shields Hill Road, Cairo, WV 26337 ("Lessee").

**WHEREAS,** _____ t, as Lessor, and **JB Exploration I, LLC**, as Lessee, are parties, heirs, successors and/or assigns to those certain oil and gas leases, as amended or modified from time to time, whether or not such amendments or modifications are of record, set forth in the attached **Exhibit A**; and

**WHEREAS**, each Lease referenced within **Exhibit A** (hereinafter collectively referred to as the "Leases") and all rights and privileges thereunder, are now owned and held by Lessor; and

**WHEREAS**, Lessor and Lessee now desire to ratify each Lease referenced in **Exhibit A** as being in full force and effect and to reconcile and release claims regarding the payment of royalties under the Leases.

**NOW THEREFORE**, for and in consideration of the foregoing recitals, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      **Recitals Above Incorporated by Reference.** Lessor and Lessee adopt the recitals provided above as part of the Leases and said recitals are confirmed to be true and accurate.

2.      **Ratification of Provisions of the Leases.** Lessor and Lessee hereby (i) ratify and agree that the Leases are valid and in effect, (ii) agree that Lessee is not in violation of any terms or provisions of the Leases, including any royalty and rental payment terms thereof, and (iii) ratify and affirm all of the terms and provisions of the Leases.

3.      **Payment.** As consideration for this Release, Ratification and Reconciliation of Oil and Gas Lease herein, Lessee shall pay Lessor $ _____ (the "Payment"), which includes interest. Within thirty (30) days of receiving Lessor's execution of this Amendment, Lessee shall deliver the Payment to Lessor at the address set forth above via U.S. mail, certified, return receipt.

4.      **RELEASE and INDEMNIFICATION.** In exchange for the Payment, promises, and other good and valuable consideration herein, **LESSOR HEREBY RELEASES, ACQUITS AND FOREVER DISCHARGES** Lessee, its directors, officers, managers, members, employees, agents, and representatives, from any and all losses, liabilities, claims, damages, demands, and causes of action, including all expenses of litigation, court costs and attorney's fees, known to or reasonably should be known by Lessor as of the Effective Date of this Agreement, and arising, whether directly or indirectly from the past payment of royalties and rentals pursuant to the Leases, including, but not limited to, the amount of royalties paid and the calculation of said royalties.

In addition, **LESSOR HEREBY AGREES TO PROTECT, INDEMNIFY AND SAVE** Lessee, its directors, officers, managers, members, employees, agents, and representatives **FREE AND HARMLESS** from any and all of the above-mentioned losses, liabilities, claims, damages, demands, and causes of action, including all expenses of litigation, court costs and attorney's fees, known to or reasonably should be known by Lessor as of the Effective Date of this Agreement, and arising, whether directly or indirectly from the past payment of royalties and rentals pursuant to the Leases, including, but not limited to, the amount of royalties paid and the calculation of said royalties; and to **RELIEVE** Lessee, its directors, officers, managers, members, employees, agents, and representatives from any and all liability incurred directly or indirectly as a result of such past payment of royalties and rentals, including, but not limited to, the amount of royalties paid and the calculation of said royalties.

Furthermore, **LESSOR HEREBY AGREES** that the Payment and acceptance of the consideration set forth herein is in **FULL AND COMPLETE PAYMENT, SETTLEMENT, COMPROMISE, AND SATISFACTION** of any and all of the above-mentioned losses, liabilities, claims, damages, demands, and causes of action, including all expenses of litigation, court costs and attorney's fees, known to or reasonably should be known by Lessor as of the Effective Date of this Agreement, accrued or accruing to the Lessor, their heirs, legatees, devisees, personal representatives, successors, and assigns, arising directly or indirectly in connection with the past payment of royalties and rentals, including, but not limited to, the amount of royalties paid and the calculation of said royalties, by Lessee, its directors, officers, managers, members, employees, agents, and representatives.

5.   **Not an Admission of Liability; Claw-back.** The Payment and consideration set forth herein, nor the execution of this Agreement by the parties, constitutes, or can be construed, as an admission of any wrongdoing or liability whatsoever by any party. Furthermore, notwithstanding any provision in this Agreement to the contrary, should a court of competent jurisdiction determine, pursuant to the same or similar royalty language as that found in the Leases, that Lessee's royalty calculations were proper, in whole or in part, Lessor shall remit to Lessee, within thirty (30) days of being notified of said decision by Lessee, all or part of the Payment equal to the amount of the calculation that would be deemed proper under the court's decision, but in no event would Lessor be required to remit more than the Payment.

6.   **Confidentiality.** The terms and conditions of this Agreement are confidential between the Parties and shall not be disclosed to anyone else, except as necessary to effectuate its terms or as required by law. Any disclosure in violation of this section shall be deemed a material breach of this Agreement. The discussions and negotiations between the parties, including the agreed upon terms and conditions set forth within this Agreement and the Agreement itself, are considered by the Parties to be confidential settlement negotiations and subject to nondisclosure under applicable law or rules of court.

7.   **Instrument is Binding.** The provisions hereof shall be binding upon and insure to the benefit of the parties, their heirs, legatees, devisees, personal representatives, attorneys, successors, and assigns.

8.      **Entire Agreement.** This agreement (together with Exhibit A attached hereto and incorporated herein) sets forth the entire agreement between the parties with respect to its subject matter. All prior negotiations and dealings regarding the subject matter hereof are superseded by and merged into this Agreement. No amendment, modification or revision of this Agreement shall be effective unless made in writing and signed by authorized representatives of both parties. Lessor and Lessee acknowledge that they have consulted an attorney concerning the terms of this Agreement or have elected not to do so but represent that they fully understand their rights and obligations hereunder. The parties further acknowledge that they have mutually negotiated the final terms and conditions of this Agreement, which shall be construed fairly and reasonably and not more strictly against one party than another.

9.      **Counterparts.** This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which will be deemed to comprise one single instrument.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first set forth above.

**LESSOR:**

_____

**LESSEE:**
JB Exploration l, LLC

By: <u>Brian Paugh</u>
Its: <u>Vice President of Land</u>

*[Acknowledgement Page Follows]*

Page 3 of 5

NOTARY PUBLIC ACKNOWLEDGEMENT

STATE OF WEST VIRGINIA

COUNTY OF _____ :

    The     foregoing     instrument    was    acknowledged   before   me,

_____, a Notary Public, this _____ day of _____,

2020 by _____ , individually.

    My commission expires the _____ day of _____, _____.


{STAMP}

_____
Notary Public


NOTARY PUBLIC ACKNOWLEDGEMENT

STATE OF WEST VIRGINIA

COUNTY OF HARRISON:

    The     foregoing    instrument    was    acknowledged   before   me,

_Natalie K. Haddix_____, a Notary Public, this _12th_ day of _May_____,

2020 by Brian Paugh, the Vice President of Land for JB Exploration I, LLC, on behalf of the

company.

    My commission expires the _16th_ day of _January___, _2021_.

{Official Seal
Notary Public, State of West Virginia
Natalie K. Haddix
199 Fort Street
Nutter Fort, WV 26301
My commission expires January 16, 2021}

_Natalie K. Haddix_
Notary Public

This instrument was prepared by:
JB Exploration I, LLC
3570 Shields Hill Road
Cairo, WV  26337


Page 4 of 5

## EXHIBIT A - LEASES

| Lessor | Lessee | County | District | Map | Parcel | Acreage | Lease Book | Lease Page |
|--------|--------|--------|----------|-----|--------|---------|-----------|-----------|
| | Cunningham Energy, LLC* | Tyler & Doddridge | See Lease Exhibit A** | See Lease Exhibit A** | See Lease Exhibit A** | See Lease Exhibit A** | 383 | 582 |

*By assignment dated February 12, 2013 and recorded in _____ 3, Cunningham Energy, LLC assigned its rights and interests in the lease to JB Exploration I, LLC.

**By a second amendment dated November 20, 2012 and recorded in _____ , in the lease was replaced with Exhibit A attached to the second amendment.

Page 5 of 5

**JAY-BEE PRODUCTION -R**
**BY ITS AGENT DMRB SERVICES, LLC**
60 WALNUT AVE., STE. 190
CLARK, NJ 07066

CAPITAL ONE BANK, NA
50-781/214

81519

PAY
TO THE
ORDER OF

Fifty-one thousand eight hundred forty dollars and 35 cents

DATE
03/31/2020

AMOUNT
$**

VOID AFTER 120 DAYS

AUTHORIZED SIGNATURE

⑈081519⑈ ⑆021407912⑆705 70 99121⑈

---

JAY-BEE PRODUCTION -R BY ITS AGENT DMRB SERVICES, LLC

81519

From:  Jay Bee Production, Inc.
To:

| | Owner | Check Date | Check Amount | Check Number |
|---|---|---|---|---|
| | SMI0021 | 03/31/2020 | $ | 9121-81519 |

See Attached

*For inquiries about your account, please call 908-686-1493. To get royalties deposited into your bank account, download an Authorization Form at www.jaybeeoil.com.   *****OUR NEW ADDRESS IS 60 WALNUT AVENUE, STE 190, CLARK, NJ 07066*****

JAY-BEE PRODUCTION -R BY ITS AGENT DMRB SERVICES, LLC

81519

Q BALANCE, LLC  (800) 216-0763[L81004HBG] 7768370



**JAY-BEE PRODUCTION**
**BY ITS AGENT DMRB SERVICES, LLC**

To:

| Invoice # | Invoice Amt |
|-----------|-------------|
| 03312020INT | |

| Vendor Code | Check Date | Check Amount | Check Number |
|-------------|------------|--------------|--------------|
| SMI0021 | 03/31/2020 | $ | 7026-14109 |

14109

**Tim Linkous**

| | |
|---|---|
| **From:** | Tim Linkous |
| **Sent:** | Wednesday, April 1, 2020 4:04 PM |
| **To:** | Joe Jenkins |
| **Cc:** | J. Michael Benninger |
| **Subject:** | Smith v. JB |

Joe:

We will pass on the telephone call for tomorrow as there have been new developments in the case.

We will be immediately serving Mr. Broda through the WV Secretary of State. We have also been informed on this date that a third party contacted our client between noon and 3 pm yesterday by telephone, referenced the pending civil action our client has against JB, referenced a representative of your client, and proposed a settlement of our client's claims for a specific dollar amount. The conversation was by chance heard by our client's daughter, and all of us are curious as to how the third party obtained our client's telephone number since our client recently moved to a new location.

We will need to fully investigate this contact, why it occurred, and who was knowledgeable of it and authorized it. We understand that the person who contacted our client is represented by legal counsel. Just wanted to give you notice of this occurrence.

We are also informed that the third party disclosed settlements or settlement offers to a number of lessors for improper deductions from royalty payments.

Mike and I will be in touch.

Tim

Timothy R. Linkous, Esquire
**Linkous Law, PLLC**
179 Hanalei Drive, Suite 100
Morgantown, West Virginia 26508
Telephone: 304-554-2400
Facsimile: 304-554-2401
http://www.LinkousLawPLLC.com



EXHIBIT
B

1

05/21/2020 2:21 PM FAX   3047594006+   TYLER CO CIRCUIT CLERK   05/21/2020 14:22   #201 P.001/002
From:

IN THE CIRCUIT COURT OF TYLER COUNTY, WEST VIRGINIA

ALLEN E. SMITH, individually
and on behalf of all other
persons and entities similarly
situated,

                **Plaintiffs,**

v.

JAY-BEE OIL & GAS, INC., a West Virginia
corporation; JAY-BEE PRODUCTION COMPANY,
a West Virginia corporation; JB EXPLORATION I, LLC, a
West Virginia limited liability company; JAY-BEE
ROYALTY, LLC, a West Virginia limited liability company;
RANDALL J. BRODA; and any other person or entity affiliated with,
interested in, or claiming any right or benefit of the subject leases,

                **Defendants.**

**FILED**

MAY 21 2020

Candy L. Warner
Tyler Co. Circuit Clerk

Civil Action No. 20-C-2 H
Hon. Judge David W. Hummel, Jr.

---

## ORDER GRANTING
## PLAINTIFF'S MOTION FOR EMERGENCY HEARING

---

On the 21st day of May 2020, Plaintiff moved this Court for an emergency hearing on

Plaintiff's Motion for Protective Order which will be filed and served *via* email by noon on May

22, 2020. The Court **FINDS** good cause to hold an expedited hearing, and, therefore, the Court

hereby **ORDERS** that this matter shall come for a hearing in the Circuit Court of Tyler County,

West Virginia on May 26, 2020 at _____ p.m. at which time the Court will hear Plaintiff's

said Motion.

Entered this _____ day of May 2020.

                Hon. Judge David W. Hummel, Jr.

Counsel tendering this Order:

Timothy R. Linkous, Esquire

Page 1 of 2

I hereby certify that the annexed instrument is a true
and correct copy of the original on file in my office.
Attest _____ Clerk
Circuit Court of Tyler County, West Virginia
By: _____ Deputy

(WVSB #8572)
Jenny L. Hayhurst, Esquire
(WVSB #11752)
Linkous Law, PLLC
179 Hanalei Drive, Suite 100
Morgantown, WV 26508
(304) 554-2400
tim@linkouslawpllc.com
*Counsel for Plaintiff*